AFFIRM; Opinion issued December 13, 2012



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00143-CV

OSTROVITZ & GWINN, LLC, Appellant

V.

FIRST SPECIALTY INSURANCE COMPANY, Appellee

On Appeal from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. 06-09925-J

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion[1] By Justice FitzGerald

Appellant Ostrovitz & Gwinn, LLC ("Landlord") owned a commercial property in Dallas,

Texas, which it leased to a tenant in 2003. The tenant obtained property insurance from appellee

First Specialty Insurance Company.[2] Landlord was identified in the policy as a loss payee, not as a

named or additional insured. After a fire damaged the buildings on the property in 2006, Landlord

sought compensation from First Specialty, and First Specialty took the position that Landlord was

---

[1] We note that a version of this opinion was inadvertently transmitted to West and Lexis and appeared on their electronic services with an issuance date of November 29, 2012. That opinion was not officially issued by the Court and is not the opinion of the Court. This is the opinion of the Court.

[2] First Specialty asserted in the trial court and asserts on appeal that its correct name is First Specialty Insurance Corporation. We will refer to it simply as "First Specialty" in this opinion.

entitled to no insurance benefits. Landlord sued First Specialty and others on a variety of theories. First Specialty obtained partial summary judgment on most of Landlord's claims against it, and Landlord appealed after the rest of its claims were disposed of. We affirm.

## I. BACKGROUND

### A. Factual allegations

Landlord alleged the following in its live pleading. In 1998 it leased some real property in Dallas County to a company now known as Integral Texas Pallet Operations, LP ("Tenant"). In 2003 that lease was renewed for a five-year term. The 1998 lease required Tenant to insure the buildings on the property and to have Landlord named as an additional insured on the policy. On account of a mutual mistake, Landlord alleged, the 2003 lease did not contain this insurance requirement.

A First Specialty insurance policy was in effect on September 9, 2006, when a fire occurred on the leased premises, damaging the buildings there. First Specialty advised Landlord that there was no coverage of Landlord's loss under the policy.

### B. Procedural history

Landlord sued Tenant, First Specialty, and the individual who allegedly set the fire. Landlord later amended its pleadings and added another defendant, Keith D. Peterson & Company, Inc., which was allegedly First Specialty's agent.[3] In its live pleading, Landlord asserted claims against First Specialty for breach of contract, violations of various provisions of the insurance code, violations of the DTPA, negligence, negligent misrepresentation, promissory estoppel, and declaratory judgment. First Specialty counterclaimed for a declaratory judgment that Landlord was not entitled to any recovery under the insurance policy in question.

---

[3] Landlord's live pleading, its third amended petition, also includes a fifth defendant in the style of the case, Insurance Office of America, Inc., but the body of the pleading includes no claim against that defendant.

Landlord filed a motion entitled "Plaintiff's First Amended Motion for Partial Summary Judgment for Declaratory Relief (Insurable Interest and Financial Interest)." By this motion, Landlord sought a partial summary judgment declaring that both Tenant and Landlord had insurable interests in the damaged buildings, declaring that Tenant had no financial interest in those buildings, and ordering First Specialty to deposit policy proceeds into the registry of the court for division between Landlord as owner of the buildings and Tenant as owner of the damaged personal property. The appellate record contains no written order disposing of this motion, but First Specialty avers in its appellate brief that the trial judge orally denied that motion at a hearing on June 23, 2010.

First Specialty filed a motion for summary judgment in which it challenged all of Landlord's claims on various grounds, including some no-evidence grounds under Texas Rule of Civil Procedure 166a(i). The judge heard First Specialty's motion, and on July 28, 2010, the judge signed an order granting First Specialty's "Traditional Motion for Summary Judgment" as to all of Landlord's claims against First Specialty except declaratory judgment. On September 2, 2010, the judge signed a second order additionally granting summary judgment for First Specialty as to some of Landlord's claims on no-evidence grounds, but expressly denying summary judgment as to Landlord's declaratory-judgment claim. Thereafter, all of the remaining claims in the case were disposed of by other orders. As part of that process, Landlord nonsuited its declaratory-judgment claim against First Specialty on December 13, 2010. The final order in the case was a dismissal of Landlord's claims against Tenant on January 11, 2011.

Landlord timely filed its notice of appeal. Because Landlord's appellate issues concern only its claims against First Specialty, First Specialty is the only appellee in this appeal. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

## II. MOTION TO AMEND NOTICE OF APPEAL

After oral argument, Landlord filed a motion for leave to file an amended notice of appeal. We grant the motion.

### A. Pertinent facts

The notice of appeal that appears in the clerk's record is missing page two. Thus, some of the text of the notice of appeal is missing; an incomplete sentence cuts off at the bottom of page one, and the next page in the record is page three, which contains only the signature block. Landlord filed a copy of the notice of appeal with the clerk of this Court the same day it filed its notice of appeal in the trial court. The copy filed with the clerk of this Court is also missing page two.

In its appellee's brief, First Specialty raises a different complaint regarding Landlord's notice of appeal. First Specialty argues that the notice of appeal limits Landlord's appeal to the partial-summary-judgment order signed on July 28, 2010, and does not invoke appellate jurisdiction over the partial-summary-judgment order signed on September 2, 2010 or the oral denial of Landlord's motion for partial summary judgment in June 23, 2010. Therefore, First Specialty concludes, we should "sever and dismiss the complaints related to those rulings." First Specialty relies on the opening language of the notice of appeal, which reads as follows:

> [Landlord] desires to appeal, and does appeal the adverse summary judgment against it granted to [First Specialty] on July 28, 2010. This Order Granting First Specialty['s] Traditional Motion for Summary Judgment was made final by the entry of the subsequent following orders: . . . .

Following this verbiage, Landlord begins a list of subsequent orders that cuts off in the middle of the third item because of the omission of page two noted above. The partial list on page one does not include the partial-summary-judgment order signed on September 2, 2010. Nor does it include the January 11, 2011 order dismissing Landlord's claims against Tenant, which was the order that

resulted in a final, appealable judgment in the case.

We informed Landlord's counsel during oral argument that page two of its notice of appeal was missing. Several days later, Landlord filed a motion for leave to file an amended notice of appeal, with a proposed amended notice of appeal attached as Exhibit A. Landlord's proposed amended notice of appeal not only cures the missing-page problem we pointed out but also addresses First Specialty's argument by changing the first sentence of the notice of appeal to recite that Landlord "desires to appeal, and does appeal the interlocutory adverse summary judgments against it granted to Defendant First Specialty Insurance Company on June 23, 2010, July 28, 2010, and September 2, 2010."[4] First Specialty filed a response in opposition to Landlord's motion for leave to amend.

## B.    Application of the law to the facts

Texas Rule of Appellate Procedure 25.1(g) provides as follows:

> An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended notice is subject to being struck for cause on the motion of any party affected by the amended notice. After the appellant's brief is filed, the notice may be amended only on leave of the appellate court and on such terms as the court may prescribe.

TEX. R. APP. P. 25.1(g). The Texas Supreme Court has indicated that appellate courts should freely grant leave to amend a notice of appeal when leave is sought. In one recent case, an insurance carrier asserting subrogation rights against an alleged tortfeasor filed a notice of appeal in the name of its insured even though its insured apparently did not desire to appeal. *Warwick Towers Council of Co-owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 838–39 (Tex. 2008) (per curiam). The court of appeals dismissed the appeal after oral argument because the

---

[4] There is no June 23, 2010 order in the record, but as noted above, First Specialty avers that there was an oral denial of Landlord's motion on that date.

carrier failed to name itself as the appellant in the notice of appeal. *Id.* at 839. The carrier filed a motion for rehearing and a motion to amend its notice of appeal, and the court of appeals denied both motions. *Id.* On further appeal, the supreme court reversed, concluding that the carrier had made a bona fide attempt to appeal by filing the notice of appeal and by listing its own interest in the docketing statement and other appellate pleadings. *Id.* Accordingly, the court of appeals erred by refusing to allow the carrier to amend its notice of appeal. *Id.* at 840.

Landlord's original notice of appeal was a bona fide attempt to invoke our jurisdiction and, therefore, successfully did so. *See Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010) (per curiam) ("[A] timely filed document, even if defective, invokes the court of appeals' jurisdiction."); *see also Warwick Towers Council*, 244 S.W.3d at 839. But the notice was defective because it was missing page two and did not state the date of the final, appealable order in the case. *See* TEX. R. APP. P. 25.1(d)(2) ("The notice of appeal must . . . state the date of the judgment or order appealed from . . . ."). The proposed amended notice corrects the defect and satisfies Rule 25.1(d)(2) by identifying the order that actually constituted the final, appealable order in the case—the January 11, 2011 order dismissing Landlord's claims against Tenant. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[I]f a court has dismissed all of the claims in a case but one, an order determining the last claim is final.") (footnote omitted); *see also Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (noting that Rule 25.1(d)(2) required appellants to state in their notice only the date their suit was dismissed, not that they were challenging an earlier interlocutory order sustaining special exceptions).

First Specialty's opposition to Landlord's motion for leave is directed to Landlord's request to modify the first sentence of its notice of appeal. In its original notice of appeal, Landlord stated that it was appealing from the July 28, 2010 partial summary judgment, but in its proposed amended

notice of appeal Landlord states that it is appealing partial-summary-judgment orders dated June 23, 2010, and September 2, 2010, as well. First Specialty argues that Landlord should not be allowed to make this amendment because Landlord did not timely file a notice of appeal from the newly added partial-summary-judgment orders, and thus we did not acquire appellate jurisdiction over those orders. We disagree. In our view, the change in the opening sentence of the notice of appeal is immaterial because the rules do not require an appellant to list in the notice of appeal every interlocutory ruling that appellant may wish to challenge on appeal. *See Gunnerman v. Basic Capital Mgmt., Inc.*, 106 S.W.3d 821, 824 (Tex. App.—Dallas 2003, pet. denied) (holding that notice of appeal from final judgment "brought forward the entire case, including earlier interlocutory orders that were not independently appealable"); *see also Vazquez v. Vazquez*, 292 S.W.3d 80, 82–83 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that appellant did not limit his issues on appeal by "gratuitously listing only some of those issues in his notice of appeal"); *Anderson v. Long*, 118 S.W.3d 806, 809–10 (Tex. App.—Fort Worth 2003, no pet.) (holding that appellant could challenge interlocutory partial summary judgment even though notice of appeal stated that appeal was from order sustaining subsequent plea to the jurisdiction); *Tex. Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 647–48 (Tex. App.—San Antonio 2002, pet. denied) (holding that notice of appeal from default judgment that was the final order in the case also allowed appellant to raise appellate issues challenging prior interlocutory order dismissing part of case for want of prosecution). Thus, the fact that Landlord specifically mentioned its intention to appeal the July 28, 2010 partial summary judgment in its original notice of appeal did not preclude it from raising appellate challenges to other interlocutory rulings as well. Allowing Landlord to file the amended notice of appeal will not change the scope of our jurisdiction or broaden the range of appellate issues Landlord may raise.

We grant Landlord's motion for leave to file an amended notice of appeal.

## III. STANDARD OF REVIEW

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Smith*, 285 S.W.3d at 909. We must take evidence favorable to the nonmovant as true, and we must indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994); *Smith*, 285 S.W.3d at 909.

When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of fact on the challenged elements. *Smith*, 285 S.W.3d at 909. "[W]e review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered. If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment cannot properly be granted." *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citations omitted). That is, a no-evidence summary judgment should be reversed if the evidence is sufficient for reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

## IV. ANALYSIS

Landlord raises ten issues on appeal. Its first five issues concern its breach-of-contract claim and its declaratory-judgment claim. Its remaining issues concern its tort claims.

## A. Breach of contract

### 1. Introduction

In issues one, three, four, and five, Landlord attacks the summary judgment on its breach-of-contract claim against First Specialty, but it presents a single argument under those issues. In its first issue, Landlord complains generally that the trial judge erred by granting First Specialty's motion for summary judgment. This issue is sufficiently broad to encompass all of Landlord's arguments. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

The elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach. *In re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.). First Specialty raised two grounds for summary judgment on Landlord's claim for breach of the insurance policy. First, it argued that Landlord had no standing to sue on the policy because Landlord was not a party to the policy. Second, it argued that it had not breached the policy in any event because Landlord's rights were derivative of Tenant's, and Tenant had no financial interest in the damaged real property.

### 2. Privity under the insurance policy

Insurance policies are contracts, so the rights and duties they create and the rules governing their interpretation are those generally pertaining to contracts. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Under the general law of contracts, a party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied). Privity exists if the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned his or her cause of action to the plaintiff. *Id.*

Considering for the moment only the four corners of the policy itself, we conclude that Landlord was not a party to the policy and therefore was not in privity with First Specialty.[5] Generally, a property-insurance policy is a personal contract between the insured and the insurer. *See Travelers Fire Ins. Co. v. Steinmann*, 276 S.W.2d 849, 851 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.). Landlord is neither a named insured nor an additional insured under the policy. Landlord does not allege that it was assigned a breach-of-contract claim by someone in privity. Accordingly, we conclude that, considering only the language of the policy itself, privity between Landlord and First Specialty is lacking.

We proceed to consider whether Landlord raised a genuine fact issue as to its standing, whether as a third-party beneficiary or otherwise.

### 3.   Standing as a third-party beneficiary

#### a.   General legal principles

To qualify as a third-party beneficiary, a third party must show that it is either a donee or creditor beneficiary of the contract, and not one who is benefited only incidentally by its performance. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). The intention of the contracting parties is controlling. *Id.* "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.; accord Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). We glean the parties' intention from the words of their contract, and not from what they allegedly meant. *Alvarado v. Lexington Ins. Co.*, No. 01-10-00740-CV, 2012 WL 5194057, at *6 (Tex. App.—Houston [1st Dist.] Oct. 18, 2012, no pet.). "All doubts must be resolved against

---

[5] Landlord argues that a separate document entitled "Evidence of Property Insurance" amounted to an independent contract between Landlord and First Specialty or modified the insurance policy so as to make Landlord a party thereto. We address this argument later in the opinion.

conferring third-party beneficiary status." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *see also First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) ("If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail."). Texas courts have occasionally recognized third-party beneficiaries in the insurance context when the policy language so requires. *See, e.g., Paragon Sales Co. v. N.H. Ins. Co.*, 774 S.W.2d 659, 660–61 (Tex. 1989) (per curiam).

Landlord argues that the foregoing rules are modified in the insurance context because of the rule that any ambiguities in an insurance policy are to be resolved in favor of coverage. *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). But as First Specialty points out, "a third person who is not a party to a contract of insurance usually is not entitled to a strict construction in his favor in determining whether the contract was made for his benefit." *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 37 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.). Thus, the rule that ambiguities in an insurance policy are resolved in favor of coverage does not apply to our inquiry into whether Landlord is a third-party beneficiary of Tenant's insurance policy. To the contrary, if there is any reasonable doubt, Landlord's claim to third-party-beneficiary status must fail. *See First Union Nat'l Bank*, 168 S.W.3d at 929.

### b. Policy language

We begin with the language of the policy. *Cf. MCI Telecomms. Corp.*, 995 S.W.2d at 650 ("Our analysis of the third-party beneficiary issue requires us to interpret the contract between MCI and MoPac."). According to the declarations page, the policy affords commercial property coverage and commercial inland marine coverage. The schedule of named insureds includes Tenant and did not include Landlord. The policy's "Schedule of Locations" includes the leased premises and, next

–11–

to the leased premises, listed an amount of $1,838,668 for "Bldgs, Bppi, Stock & Mobile Equipment." The main property-coverage part of the policy is entitled "Building and Personal Property Coverage Form."[6] This 14-page coverage form defines "we" as First Specialty and "you" as the named insureds. Section A of the coverage form, entitled "Coverage," provides that First Specialty "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." But section A does not say who is entitled to enforce First Specialty's obligation to pay in the event of a covered loss to covered property.

The payment of claims is addressed in section E of the coverage form, entitled "Loss Conditions." Section E.4, entitled "Loss Payment," contains the following terms:

d.      We will not pay you more than your financial interest in the Covered Property.

e.      We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

On our reading of section E.4.e, First Specialty reserves the right—but assumes no obligation—to adjust losses with and pay an owner of covered property who is not a named insured. The provision further establishes that such payments will count towards satisfaction of any claim by the named insured. But section E.4.e does not clearly show an intent by Tenant and First Specialty to confer a direct benefit on Landlord. Rather, section E.4.e seems to confer a right on First Specialty by giving First Specialty the option of paying the owners of covered property, even if the owners are not named insureds, and providing that such payments will satisfy the named insured's claim for the

_____

[6] This particular form is an ISO form and bears the legend "CP 00 10 04 02."

–12–

owner's property.

Finally, the loss-payment terms of section E.4 are supplemented by a separate, two-page policy endorsement entitled "Loss Payable Provisions."[7] The endorsement identifies Landlord by name as a "Loss Payee" in an attached schedule.[8] The endorsement also adds some additional terms to the loss-payment provisions found in section E of the coverage form. The parties focus on section B of the endorsement, entitled "LOSS PAYABLE," which provides:

> For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
>
> 1. Adjust losses with you; and
>
> 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

On our reading, section B of the endorsement, like section E of the coverage form, is not a clear promise by First Specialty to pay a loss payee for covered damage to covered property, even in the absence of a claim by the named insured. To the contrary, in section B, First Specialty assumes the duty of adjusting losses only with the named insured. If First Specialty ever pays a claim that fits the description in section B, it promises to pay the claim "jointly to [the named insured] and the Loss Payee, as interests may appear," but section B contains no clear promise by First Specialty to pay a claim by a loss payee in the absence of a claim by the named insured.

Thus, considering only the language of the policy, and before considering any other evidence or judicial decisions on point, we are inclined to conclude that the policy does not clearly and fully demonstrate an intention by Tenant and First Specialty to contract for the direct benefit of Landlord.

---

[7] The endorsement is an ISO form and bears the legend "CP 12 18 06 95."

[8] To be precise, the schedule of loss payees includes "Gwinn & Ostrovitz," not Ostrovitz & Gwinn, L.L.C. In its appellate brief, First Specialty avers that "Ostrovitz & Gwinn is listed as a loss payee in the Policy" and cites the schedule of loss payees in support, so despite the discrepancy there is no dispute that Landlord is a loss payee under the policy.

Under such a conclusion, Landlord would lack standing to sue as a third-party beneficiary of the policy.

### c. Judicial interpretations of loss-payee provisions

The parties cite numerous authorities from Texas and other jurisdictions in support of their respective policy interpretations. But few if any of their authorities address loss-payee standing, and none closely analyze that issue under the same policy language involved in this case, so the precedents are of little use.

Several Texas decisions have turned on the interpretation of loss-payee provisions, but we have not found a Texas case specifically addressing the standing or third-party-beneficiary status of a loss payee under these particular policy provisions. In the auto-insurance context, there are a few cases in which a court has entertained a loss payee's suit for coverage directly against the insurance carrier. *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Budget Motors, Inc.*, No. 05-02-01763-CV, 2003 WL 21544511 (Tex. App.—Dallas July 10, 2003, no pet.) (mem. op.); *Fire & Cas. Ins. Co. of Conn. v. BusLease, Inc.*, No. 08-01-00277-CV, 2002 WL 1301570 (Tex. App.—El Paso June 13, 2002, pet. denied) (not designated for publication); *Old Am. Mut. Fire Ins. Co. v. Gulf States Fin. Co.*, 73 S.W.3d 394 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Don Chapman Motor Sales, Inc. v. Nat'l Sav. Ins. Co.*, 626 S.W.2d 592 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Landlord argues that this means the courts implicitly recognized loss-payee standing. We need not decide whether Landlord is correct because the cases are distinguishable. The question of third-party-beneficiary standing depends on the language used in the contract. Some of the opinions cited above do not quote or describe in any detail the relevant loss-payee provisions, so they are not instructive precedents in the instant case. *See Progressive Cnty. Mut. Ins. Co.*, 2003 WL 21544511, at *1–5; *Fire & Cas. Ins. Co.*, 2002 WL 1301570, at *1–5. The others involve policy provisions that are

distinctly more protective of the loss payee's interest than the language in the First Specialty policy. *See Old Am.*, 73 S.W.3d at 395; *Don Chapman*, 626 S.W.2d at 594. In short, we have found no Texas case authority that weighs against our preliminary conclusion that Landlord is not a third-party beneficiary of this policy.

Similarly, cases from other jurisdictions are of little help. Only a few of them specifically address a loss payee's third-party-beneficiary status, and even those generally do not carefully analyze the policy language in question. For example, First Specialty relies heavily on *Northwestern National Casualty Co. v. Khosa, Inc.*, 520 N.W.2d 771 (Minn. Ct. App. 1994). *Khosa* supports First Specialty's position because the policy language involved in that case closely tracks the loss-payable endorsement involved in this case, the named insured made no claim on the policy, and the court held that the loss payee had no rights under the policy because its rights were derivative of the rights of the named insured. *Id.* at 774–75. But the court did not explain why or how the policy language supported its holding, so its opinion is not particularly persuasive.

Somewhat more persuasive is *May v. Mid-Century Insurance Co.*, 151 P.3d 132 (Okla. 2006). In that case, a condominium owner suffered some fire damage to her unit. *Id.* at 134. She sued Mid-Century, which was the insurer for her homeowner's association, for bad faith in refusing to pay her claim under the association's policy. *Id.* The Oklahoma Supreme Court concluded that the carrier owed the plaintiff no legal duty under the policy, based largely on a loss-payment clause in the policy that provided, "We may adjust losses with the owners of lost or damaged property if other than you [the named insured]." *Id.* at 137 n.18, 140–41. The court concluded that this clause—which also appears in the policy involved in the instant case—gave the insurance carrier the exclusive choice to settle covered claims with the association or with the unit owners, thereby negating any contractual right running directly to the unit owners. *Id.* at 140–41. *May* supports our

view that the above-quoted clause shows an intention to confer an option on the insurance carrier, and not a direct benefit on a loss payee.

Authorities from a few other jurisdictions support Landlord, but they are unpersuasive because they fail to explain why the particular policy language involved justified treating a loss payee as a third-party beneficiary. *See, e.g., DeMay v. Dependable Ins. Co.*, 638 So. 2d 96, 97 (Fla. Dist. Ct. App. 1994); *Canal Ins. Co. v. Savannah Bank & Trust Co.*, 352 S.E.2d 835, 839 (Ga. Ct. App. 1987); *Wunschel v. Transcontinental Ins. Co.*, 839 P.2d 64, 70 (Kan. Ct. App. 1992); *see also Waterfield Mortg. v. Buckeye State Mut. Ins. Co.*, No. 93-CA-53, 1994 WL 527594, at *4 (Ohio. Ct. App. Sept. 30, 1994) (holding that there was a genuine fact issue as to whether loss-payee was third-party beneficiary of insurance policy). Some secondary authorities also support Landlord's position, but they likewise offer no justification grounded in policy language. *See* 20B JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 11749 (1980); 17 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 242:69 (2005). Thus, Landlord's authorities are not particularly persuasive.

### d.      Extrinsic evidence

Finally, the parties refer us to some extrinsic evidence. Of course, extrinsic evidence may be considered only if the policy is ambiguous. *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 681 (Tex. App.—Dallas 2008, no pet.) ("If the agreement is not ambiguous . . ., then the courts do not consider extrinsic evidence in interpreting the agreement."). Although neither party argues that the policy is ambiguous, we will assume arguendo that it is because, as shown below, the extrinsic evidence does not affect the outcome.

Landlord argues that we should interpret the policy in light of revised loss-payable provisions that appear in a subsequent ISO form. According to Landlord, a 2007 ISO form provides that the

insurer will adjust a building owner's damages or losses with it as loss payee. The argument fails. First, Landlord provides no record citation for this alleged form, and we cannot find it in the appellate record. Thus, we cannot rely on it. Moreover, even assuming the revised form exists and says what Landlord claims it says, it would not support Landlord's position. Regardless of the contents of the revised policy, the policy language pertinent to this case still would not clearly show an intention to make a loss payee like Landlord a third-party beneficiary. In addition, when a drafter changes the language of a text, it often signifies a change in meaning. *See Friedrich Air Conditioning & Refrig. Co. v. Bexar Appraisal Dist.*, 762 S.W.2d 763, 767 (Tex. App.—San Antonio 1988, no writ) (stating that legislative change in the law tends to show an intention to change the law); *cf. PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 708 (Tex. App.—Dallas 2011, pet. denied) ("The use of different language in different parts of a contract generally means that the parties intended different things."). Thus, the existence of a revised form that clearly makes a loss payee a third-party beneficiary would not tend to show that a prior version of the form using different verbiage had the same meaning.

Other extrinsic evidence tends to support First Specialty's position. One witness testified by deposition that he interpreted section B of the loss-payable endorsement to mean that First Specialty had no obligation to pay the loss payee unless the named insured asked First Specialty to do so. Another witness testified by deposition that, looking at the policy "in isolation of all other facts," there was nothing in the policy that provided for the loss payee to have a direct claim or cause of action against First Specialty.

Thus, assuming for the sake of argument that we can properly consider extrinsic evidence in this case, we conclude that the extrinsic evidence does not support Landlord's position in this case.

### e.   Conclusion

The legal test is whether the insurance policy clearly and fully spells out an intention by Tenant and First Specialty to confer a direct benefit on Landlord. *See MCI Telecomms. Corp.*, 997 S.W.2d at 651. In case of any reasonable doubt, we must rule against Landlord on the issue. *See First Union Nat'l Bank*, 168 S.W.3d at 929. We conclude that the insurance policy does not clearly and fully spell out the necessary intention. Accordingly, the trial judge properly granted summary judgment on Landlord's breach-of-contract claim to the extent Landlord relies on third-party-beneficiary status under the policy.

### 4.   Standing under the "Evidence of Property Insurance"

Landlord argues that it also had standing to sue First Specialty for breach of contract based on a one-page certificate entitled "Evidence of Property Insurance" (EPI) dated September 11, 2006 (two days after the fire).[9] According to Landlord, this document gave rise to an independent contract and "functions as a contract of insurance" between it and First Specialty.

The EPI certificate states at the top, "This is evidence that insurance as identified below has been issued, is in force, and conveys all the rights and privileges afforded under the policy." The certificate has several blanks that have been filled in with typewritten information. For example, the policy involved in this case is identified by policy number and policy period, and the policy period includes the date of the fire involved in this case. "Ostrovits [sic] & Gwinn, LLC" is listed in a box labeled "Additional Interest." There are three small boxes labeled "mortgagee," "loss payee," and "additional insured" respectively; only the loss-payee box is marked with an "X." A box labeled "REMARKS (Including Special Conditions)" contains the following typewritten language:

---

[9] The document bears the legend "ACORD 27 (3/93)" at the bottom. Landlord also filed two other EPI certificates, but they recite policy periods that do not encompass the date of the fire involved in this case. Thus, those documents are not relevant to our breach-of-contract analysis.

*$10,000,000 Loss Limit per Occurrence / Certificate Holder is Loss Payee with respect to their interest as Landlord/Owner in the above locations / 30 day notice of cancellation except 10 days for nonpayment of premium

Another box labeled "CANCELLATION" contains the sentence, "The policy is subject to the premiums, forms, and rules in effect for each policy period."

We reject Landlord's position and hold that the EPI certificate did not create or amount to a contract of insurance directly between Landlord and First Specialty. The first sentence of the document recites that the document is "evidence" that the insurance described below exists; there is no indication in the document that it constitutes an insurance contract in and of itself. Moreover, that sentence states only that the insurance policy "identified below . . . conveys all the rights and privileges afforded under the policy"; it does not indicate that the EPI certificate is intended to change those rights and privileges. The description of the insurance found in the remainder of the document also does not improve Landlord's status beyond its status as provided in the policy itself. The document contains a recitation that Landlord is "Loss Payee with respect to their interest as Landlord/Owner in the above locations," and the box labeled "loss payee" is marked. These statements accurately state Landlord's status under the policy, but we have already concluded that a loss payee under the policy does not enjoy the right to sue First Specialty on the policy directly. We conclude the EPI certificate did not constitute a contract between Landlord and First Specialty or change Landlord's status under the policy. *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 761 (5th Cir. 2002) (stating that policy terms control over the terms of a certificate of insurance when the certificate expressly incorporates the policy's terms).

Landlord's authorities do not support its position. It relies on *Asousa Partnership v. Manufacturers Alliance Insurance Co. (In re Asousa Partnership)*, No. 03-1005, 2005 WL 2857983 (Bankr. E.D. Pa. Sept. 23, 2005), *aff'd*, No. 05-5719, 2006 WL 2828890 (E.D. Pa. Sept. 29, 2006),

for the proposition that the EPI form involved in this case can be used to make a landlord an additional insured or loss payee under an insurance policy. In that case, an insurance agent issued an EPI certificate that erroneously listed the recipient as an additional insured on the policy, and the court concluded that this obliged the insurance carrier to treat the recipient an additional insured. 2005 WL 2857983, at *1, 6. In the instant case, by contrast, the EPI certificate did not indicate that Landlord was anything but a loss payee, which is also what the policy itself provided. Landlord cites two other cases for the proposition that a loss payee may rely on representations made in an EPI certificate. *See Comdisco Ventures, Inc. v. Fed. Ins. Co. (In re Comdisco Ventures, Inc.)*, No. 04 C 2007, 2005 WL 1377856 (N.D. Ill. June 8, 2005); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The cases stand for the proposition that an EPI certificate can support a claim for misrepresentation, *Comdisco, Inc.*, 2005 WL 1377856, at *8; *Brown & Brown*, 317 S.W.3d at 383–96, but they say nothing about whether the EPI certificate involved in this case can support a breach-of-contract claim by Landlord directly against First Specialty.

We conclude that the EPI certificate was not a contract between Landlord and First Specialty and did not make Landlord a party to the insurance policy.

## 5.     Conclusion

First Specialty demonstrated as a matter of law that Landlord was not in privity with First Specialty on Tenant's insurance policy, that Landlord was not a third-party beneficiary of the policy, and that the EPI certificate did not confer on Landlord any additional contractual rights against First Specialty. Accordingly, the trial judge correctly granted summary judgment in favor of First Specialty on Landlord's breach-of-contract claim. We need not address the parties' other arguments over whether Tenant had a financial interest in the damaged buildings.

## B.    Declaratory judgment

In its second issue on appeal, Landlord asserts that the trial judge erred by denying its First Amended Motion for Partial Summary Judgment for Declaratory Relief. We conclude the issue is moot because Landlord later nonsuited its claim for declaratory judgment. Thus, there is no live claim on which we could grant judgment even if we were to agree with Landlord's position, and there is no live controversy for us to consider. *See McNeill v. Hubert*, 23 S.W.2d 331, 332–33 (Tex. 1930) (holding that appeal of interlocutory order was mooted when plaintiff nonsuited the only claim in the case).

## C.    Other claims

In issues six through ten, Landlord contends that the trial judge erred by granting summary judgment against Landlord on its claims for DTPA violations, insurance-code violations, misrepresentation, negligence, and promissory estoppel. Landlord presents a single argument in support of all five of these issues, without clearly delineating which part of its argument relates to each claim. We address the claims in turn.

### 1.    DTPA and insurance-code claims

Landlord alleged that First Specialty violated the DTPA by violating sections 17.46(5) and 17.46(12) of the business and commerce code and by violating sections 541.060 and 541.061 of the insurance code. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (West 2011). Landlord also asserted claims directly under section 541.060 and 541.061 of the insurance code. *See* TEX. INS. CODE ANN. §§ 541.060–.061, 541.151 (West 2009). First Specialty raised the following summary-judgment grounds against these claims: (1) First Specialty established that it was not liable to Landlord for breach of contract, so it could not be liable to Landlord under the DTPA, (2) First Specialty established that the parties' dispute was nothing more than a non-actionable bona fide coverage

-21-

dispute, (3) there is no claim under Texas law for bad faith in underwriting, (4) Landlord could produce no evidence that First Specialty violated the relevant sections of the DTPA or the insurance code, (5) Landlord could produce no evidence of detrimental reliance as required by sections 17.46(b)(5) and 17.46(b)(12) of the DTPA, and (6) Landlord could produce no evidence of damages independent from its breach-of-contract damages.

First Specialty's no-evidence grounds are dispositive. In response to those arguments, Landlord relies on the EPI certificates it received and on an affidavit by one of Landlord's owners, Ed Ostrovitz. Ostrovitz testified that he requested the EPI certificates to confirm for Landlord's creditor that the property, including Landlord's interest therein, was insured by Tenant. He also testified that Landlord did not seek its own property insurance because each year it relied on the representations contained in the certificates. As for the EPI certificates themselves, it appears to us that the certificate relating to the policy in effect at the time of the fire is irrelevant because it is dated two days after the fire and so could not have influenced Landlord's pre-loss decisions about insuring its own property. The two earlier certificates concerned policies in effect from March 2003 to March 2004 and March 2004 to March 2005, respectively. We will assume arguendo that these earlier certificates could have influenced Landlord's insurance decisions with respect to the property relevant to the time of the fire.

With respect to section 17.46(b)(5) of the DTPA, we examine whether Landlord adduced any evidence that First Specialty represented that any services had "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" that they did not have, or that a person had "a sponsorship, approval, status, affiliation, or connection" that he, she, or it did not have. *See* TEX. BUS. & COM. CODE ANN. § 17.45(3) ("person" includes business entities and groups); *id.* § 17.46(b)(5). Landlord argues that its evidence shows that First Specialty falsely assured Landlord

–22–

that its interest in its buildings was covered by Tenant's policies. We disagree. Both of the pre-fire EPI certificates show that Landlord was a loss payee and not an additional insured. Both certificates state, "Certificate Holder is Loss Payee with respect to their interest as Landlord / Owner of the locations listed above. $10,000,000 Loss Limit / $100,000 Deductible." Landlord adduced no evidence that the policies evidenced by these certificates did not make Landlord a loss payee. Landlord adduced no evidence that First Specialty represented its policies to have characteristics or benefits that they did not, or that Landlord enjoyed a status that it did not. Landlord has not shown error with respect to the disposition of this DTPA theory.

With respect to section 17.46(b)(12) of the DTPA, we consider whether Landlord adduced any evidence that First Specialty represented that an agreement conferred or involved rights, remedies, or obligations that it did not have or involve. *See id.* § 17.46(b)(12). For the same reasons stated above, we conclude Landlord adduced no evidence that First Specialty made any such false representations.

Landlord asserted claims against First Specialty both under the DTPA and directly under the insurance code for violating the insurance code in the following respects:

1.    by making an untrue statement of material fact, *see* TEX. INS. CODE ANN. § 541.061(1);

2.    by failing state a material fact that is necessary to make other statements made not misleading, *see id.* § 541.061(2);

3.    by making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact, *see id.* § 541.061(3);

4.    by misrepresenting material facts or policy provisions relating to the coverage at issue in connection with settlement, *see id.* § 541.060(a)(1);

5.    by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim as to which liability has become reasonably clear, *see id.* § 541.060(a)(2)(A);

6.     by failing to provide promptly a reasonable explanation of the bases for denial of a claim, *see id.* § 541.060(a)(3);

7.     by failing to affirm or deny coverage or submit a reservation of rights letter within a reasonable time, *see id.* § 541.060(4);

8.     by refusing to pay a claim without a reasonable investigation, *see id.* § 541.060(a)(7);

9.     by compelling Landlord to file suit to recover the amount due under a policy;

10.     by making a material misstatement of the law.

The EPI certificates and Ostrovitz affidavit have nothing to do with most of these theories, and we conclude that theories one and four through ten are supported by no evidence. Theories two and three present a closer question, requiring us to consider whether the EPI certificates were misleading rather than simply false. We conclude that they were not misleading. Although the certificates plainly stated that Landlord was a loss payee and not an additional insured, they did not explain what rights Landlord enjoyed as a loss payee. Thus, the certificates were somewhat unclear. This lack of clarity, however, does not rise to the level of being misleading, because the certificates pointed beyond themselves to the underlying insurance policies for the specific terms of those policies. The certificates stated that the insurance identified therein "conveys all the rights and privileges afforded under the policy." The certificates also provided that "the policy is subject to the premiums, forms, and rules in effect for each policy period." Because the EPI certificates plainly referred the reader to the identified insurance policies for the actual rights, privileges, and terms of those policies, we conclude that they were not misleading. Our conclusion is supported by a recent decision of the Fifth Circuit in which it held that a policy description was not misleading because it plainly stated that the terms of the actual insurance policy governed whenever the description was silent or conflicted with the policy. *See Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*

-24-

657 F.3d 262, 267–70 (5th Cir. 2011) (applying Texas law).

Landlord relies heavily on the case of *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). That case is distinguishable. Omni Metals stored over $2 million worth of steel in a warehouse operated by a company called Port Metals. *See id.* at 370. Port Metals insured the premises through an insurance agency, and an agent incorrectly told Port Metals that the insurance policy covered stored materials like Omni Metals'. *Id.* at 371. The agent later realized his mistake but did not correct it. *Id.* art 371–72. Omni Metals requested and received certificates of insurance from the agency three times. *Id.* at 372. One certificate recited that the policy's coverage "INCLUDES PROPERTY OF OTHERS IN CUSTODY OF INSURED," while the other two recited that the insurance covered "All Risk." *Id.* The certificates also contained a disclaimer that they were informational only and did not amend the coverage afforded by the policies described therein. *Id.* There was a fire that destroyed $2.6 million worth of Omni Metals' steel, and the insurer denied coverage. *Id.* at 370. At trial on Omni Metals' claims for negligent misrepresentation and DTPA violations, the insurance agent admitted that the first certificate of insurance was "untrue," and the insurance agency's expert testified that the certificates were "misleading." *Id.* at 372. The jury found in favor of Omni Metals, and the court of appeals held that the evidence was sufficient to support the misrepresentation and DTPA findings. Despite the disclaimers in the certificates of insurance, the court of appeals held that the evidence of affirmative misrepresentations by the insurance agent was sufficient to support the jury's findings. *Id.* at 384–87. In the instant case, by contrast, Landlord has not adduced any evidence of false representations or misleading statements by First Specialty. At most, Landlord adduced evidence that First Specialty furnished EPI certificates that were unclear as to what rights Landlord enjoyed under the policies but were clear that Landlord was a loss payee and not an additional insured. This

was not enough to defeat First Specialty's no-evidence motion for summary judgment.

The trial judge correctly granted summary judgment as to Landlord's DTPA and insurance-code claims.

## 2. Negligent misrepresentation

Landlord alleged that First Specialty committed negligent misrepresentation when its agent, Keith D. Peterson & Company, issued the EPI certificate to Landlord. The elements of negligent misrepresentation are (1) the defendant made a representation in the course of its business or in a transaction in which it had an interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Cunningham v. Tarski*, 365 S.W.3d 179, 186–87 (Tex. App.—Dallas 2012, pet. denied). First Specialty moved for summary judgment on this claim on both traditional and no-evidence grounds. First Specialty argued that the evidence conclusively refuted the first two elements of negligent misrepresentation, and additionally that Landlord could not produce any evidence that First Specialty made any representations or that First Specialty provided any false information.

We uphold the summary judgment on both no-evidence grounds. As to the first ground, Landlord assumes without demonstrating that the representations in the EPI certificates are imputable to First Specialty. Each certificate, however, recites that the "producer" of the certificate is Keith D. Peterson & Co., Inc., not First Specialty. Landlord asserts in its brief that First Specialty issued the EPI certificates "by and through K.D. Peterson & Company, Inc.," but Landlord cites no evidence that would raise a fact issue as to the existence of an agency relationship between Keith D. Peterson & Co., Inc. and First Specialty. Thus, the EPI certificates, standing alone, are no evidence

of a statement by First Specialty, and no evidence of the first element of negligent misrepresentation.

Moreover, we conclude that Landlord has adduced no evidence that the EPI certificates conveyed "false information." The EPI certificates that related to the policy periods from 2003 to 2005 recite that Landlord had an "additional interest" and was a loss payee on those two policies, but they also indicate that Landlord was not an additional insured. They also recite that there was a $10,000,000 loss limit on those policies. Landlord has adduced no evidence that those representations were false. Landlord argues that because the certificates did not explain the limited rights of loss payees, these statements were partial disclosures that created a false impression that it and its property were covered by the policies. But the certificates make clear that Landlord was not an additional insured, and that the rights and privileges conveyed by each policy were those "afforded under the policy." Unlike *Brown & Brown*, this case does not involve any affirmative misrepresentations by First Specialty that Landlord enjoyed coverage that the policies did not actually confer. *See* 317 S.W.3d at 384–87. Thus, Landlord adduced no evidence that First Specialty conveyed false information to Landlord.

The trial judge correctly granted summary judgment as to Landlord's negligent-misrepresentation claim.

### 3.    Promissory estoppel

Landlord alleged that First Specialty is liable for promissory estoppel based on the EPI certificates. "The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). First Specialty attacked the first and third elements of the claim on both traditional and no-evidence grounds.

In its appellant's brief, Landlord devotes only one short paragraph to its promissory-estoppel

claim. Landlord concludes, without citation to the record, that it "justifiably relied on the declaration of $10 million in Property coverage to its detriment." We will not "search a voluminous record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid." *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 817 (Tex. App.—Dallas 2003, pet. denied). Landlord's attack on the summary judgment with respect to its promissory-estoppel claim is waived.

Even if we were to address Landlord's argument, we would conclude it is without merit, based on First Specialty's no-evidence challenge to the element of detrimental and substantial reliance. Two of the three EPI certificates concern insurance policies that had expired long before the September 9, 2006 fire took place, so they are no evidence that Landlord incurred substantial and detrimental reliance on them with respect to the fire. The EPI certificate evidencing the insurance policy in effect at the time of the fire is dated two days after the fire, so it is logically impossible for Landlord to have incurred detrimental reliance on that post-loss certificate with respect to the fire. The Ostrovitz affidavit mentioned above contains the following testimony:

> As I [sic] result of receiving the evidence of property insurance each year and the representations contained therein, neither myself nor Ostrovitz & Gwinn sought to obtain separate or additional property insurance on the buildings, rather I relied on the representations contained in the evidence of property insurance that I received each year that the buildings leased by IFCO were continuously insured for $10m and that Ostrovitz & Gwinn's interest as landlord and owner was also insured for $10m.

This testimony is conclusory and does not demonstrate that Landlord received and relied on any EPI certificate that evidenced insurance coverage in effect at the time of the fire and was received by Landlord before the fire occurred. Thus, the Ostrovitz affidavit, even in conjunction with the EPI certificates, is no evidence of substantial and detrimental reliance by Landlord.

The trial judge correctly granted summary judgment as to Landlord's promissory-estoppel

claim.

## 4. Negligence

Landlord asserted a claim against First Specialty and Keith D. Peterson & Company for general negligence. Landlord alleged that Tenant requested them to insure Landlord's interest "as owner and landlord," and that they negligently failed to do as requested. The elements of negligence are a duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). In its summary-judgment motion, First Specialty asserted that the evidence proved that it owed no duty to Landlord and that, to the extent it did owe a duty to Landlord, it did not breach that duty. The gist of First Specialty's argument was that Tenant's agent asked for Landlord to be added to Tenant's insurance policy as a loss payee, and that is what Keith D. Peterson & Company did. First Specialty also raised a no-evidence attack on the element of duty.

The existence of a legal duty is a question of law for the court to decide based on the particular facts surrounding the occurrence in question. *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 459–60 (Tex. App.—Dallas 2007, pet. denied). We consider several related factors, including the risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.* at 460. First Specialty points out that the supreme court has already adopted a clear no-duty rule in this area: an insurance agent owes his customer no duty to extend the customer's insurance coverage merely because the agent knows that the customer has a need for additional coverage. *McCall v. Marshall*, 398 S.W.2d 106, 109 (Tex. 1965). This rule applies especially when there is no evidence of prior dealings in which the agent has taken care of his customer's needs without consulting him. *Id.* The supreme court has also held that an insurance

agent who undertakes to procure insurance for a client owes that client a duty of reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992).

We review the evidence in the light most favorable to Landlord. The evidence showed that Tenant's retail insurance agent was a company called Insurance Office of America (IOA). David Keith Thompson of IOA serviced Tenant's account on a day-to-day basis. If Tenant wanted a policy or wanted to change a policy, IOA would go through Keith D. Peterson to accomplish that result. Thompson testified in deposition that he sent a fax to Erin Hanson at Keith D. Peterson & Company, Inc. stating that Landlord "needs evidence of property coverage including their [sic] interest as owner" of two locations, one of which was the property involved in this case. The fax was dated November 11, 2003. Thompson testified that by his fax, he was attempting to convey a request that Landlord be added to Tenant's insurance policy as a loss payee. He assumed that this is what would happen. The EPI certificates indicate that Landlord was in fact added to the insurance policies as a loss payee, and the actual policy involved in this case included Landlord as a loss payee.

The summary-judgment evidence thus shows that Tenant's agent made a single request for insurance coverage—that Landlord be added to Tenant's property insurance as loss payee with respect to two locations. We hold, consistent with *McCall v. Marshall*, that First Specialty owed Landlord no legal duty to extend insurance coverage for Landlord's benefit beyond the coverage requested by Tenant. *See Leigh v. Kuenstler*, No. 14-08-00245-CV, 2009 WL 3126538, at *3 (Tex. App.—Houston [14th Dist.] Oct. 1, 2009, no pet.) (mem. op.) (holding that insurance agent who procured insurance as requested by his client "had no duty to do more"). Alternatively, to the extent First Specialty did owe a duty to Landlord, we hold that First Specialty conclusively established that it satisfied that duty by providing the coverage requested and expected by Tenant. Thus, the trial

–30–

judge correctly granted summary judgment in favor of First Specialty on Landlord's negligence claim.

## V.   DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment.

KERRY P. FITZGERALD
JUSTICE

110143F.P05

-31-



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

OSTROVITZ & GWINN, LLC, Appellant

No. 05-11-00143-CV        V.

FIRST SPECIALTY INSURANCE
COMPANY, Appellee

Appeal from the 191st Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
06-09925-J).
Opinion delivered by Justice FitzGerald,
Justices O'Neill and Lang-Miers
participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellee First Specialty Insurance Company recover its
costs of this appeal from appellant Ostrovitz & Gwinn, LLC.


Judgment entered December 13, 2012.


KERRY P. FITZGERALD
JUSTICE