**AFFIRM; Opinion Filed July 2, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

---

**No. 05-12-00078-CV**

---

**KENNETH HENNING, Appellant**
**V.**
**ONEWEST BANK FSB, Appellee**

---

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-16465-L**

---

## OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Lang

Appellant Kenneth Henning challenges the trial court's summary judgment in favor of

appellee OneWest Bank FSB ("OneWest") in a dispute respecting a residential mortgage loan.

Specifically, Henning asserts in twelve issues[1] that the trial court erred by granting OneWest's

(1) traditional motion for summary judgment on OneWest's "foreclosure action" and (2) no-

evidence motion for summary judgment on Henning's claims against OneWest pertaining to

OneWest's status as "holder" of the note in question, common law and statutory fraud, filing a

fraudulent lien, negligent misrepresentation, violation of the Texas Debt Collection Practices Act

and the Texas Deceptive Trade Practices Act, breach of contract, exemplary damages, and

declaratory and injunctive relief.

---

[1] In the table of contents and list of "Issues Presented for Review" in his amended brief in this Court, Henning lists eleven issues for review. However, in the argument section of his brief, he asserts and argues twelve issues.

We decide against appellant on his twelve issues. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record shows that in 2005, Henning obtained a mortgage loan ("the loan") from Willow Bend Mortgage Company for the purchase of a home at 10409 Huffines Drive in Rowlett, Texas ("the property"). In connection with the loan, Henning signed a December 22, 2005 promissory note ("the note") payable to Willow Bend Mortgage Company. Additionally, to secure repayment of the debt evidenced by the note, Henning executed a deed of trust ("the deed of trust") granting a security interest in the property.[2]

On June 30, 2010, Henning signed a "Loan Modification Agreement" (the "loan modification agreement) which stated that it "amends and supplements" the note and deed of trust. In the loan modification agreement, Henning agreed that the amount payable under the note and deed of trust was $308,804.88 and promised to repay that amount, plus interest, to "IndyMac Mortgage Services, a division of OneWest Bank, FSB," in specified payments.

In a letter to Henning dated October 19, 2010, IndyMac Mortgage Services notified him that (1) the loan was in "serious default," (2) he could cure the default by submitting the specified amount due by certified mail on or before November 20, 2010, and (3) failure to cure the default could result in foreclosure. On December 22, 2010, Henning filed this lawsuit against OneWest, asserting the claims described above.

OneWest filed a general denial answer and a counterclaim for foreclosure. In its counterclaim, OneWest asserted in part

> One West or its successor in interest is the holder of the Note and a lien on the
> Property securing the payment of the Note and is entitled to enforce the Note and

---

[2] Willow Bend Mortgage Company was named as the "lender" in the deed of trust. The "beneficiary" under the deed of trust was Mortgage Electronic Registration Systems, Inc. ("MERS"), described in the deed of trust as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."

Deed of Trust in accordance with the terms of the Note, Deed of Trust, and applicable law.

Henning filed a general denial answer to OneWest's counterclaim.

On November 18, 2011, OneWest filed a traditional motion for summary judgment on its counterclaim for foreclosure and a no-evidence motion for summary judgment on all of Henning's claims. In its traditional motion for summary judgment, OneWest stated in part

> In his Petition, Henning asserts that OneWest is not the holder of the Note, and, as such, could not enforce the Note. This Court should grant final summary judgment for OneWest because OneWest can conclusively establish the existence of a valid note, the chain of title on that note, Henning's liability to OneWest for the debt evidenced by the note, and Henning's default on the note. Therefore, OneWest is entitled to final judgment in its favor as a matter of law.

The evidence attached to OneWest's traditional motion for summary judgment included an affidavit of OneWest manager Rebecca Marks in which she stated in part (1) a "true and correct copy" of the note is attached, (2) Henning's signature is on the note, (3) payment of the note is secured by the deed of trust, (4) "OneWest Bank, FSB is in possession of the original Note, is the current holder of the Note and Deed of Trust, and is entitled to enforce the Note and Deed of Trust and to collect all sums due thereunder," (5) "Henning defaulted on the Note and Deed of Trust by failing to make payments as they became due," (6) "Movant mailed to Henning a written Notice of Default informing Henning of Movant's intent to accelerate the remaining installments under the Note if the default in payments were not timely cured," (7) "[t]he default was not cured, and a Notice of Acceleration was sent on behalf of Movant" and (8) "the sum of $324,143.86 is due and owing on the Note." Copies of the note, deed of trust, loan modification agreement, and documents pertaining to Henning's payment history were attached to Marks's affidavit. The copy of the note showed an endorsement by Willow Bend Mortgage Company to "IndyMac Bank, F.S.B." and, below that endorsement, an endorsement in blank by "IndyMac Bank, F.S.B."

–3–

On December 12, 2011, Henning filed two responses to OneWest's summary judgment motions, one titled "Objection and Response to Defendant's Motion for Summary Judgment" and one titled "Response to Defendant's No-Evidence Motion for Summary Judgment." In his "Objection and Response to Defendant's Motion for Summary Judgment," Henning asserted OneWest "has failed to establish its claim of foreclosure." Specifically, Henning argued in part (1) "[t]he Note was not signed in favor of Indymac [or] OneWest"; (2) Henning entered into a loan modification agreement with OneWest that he relied on and OneWest did not honor; and (3) OneWest prepared and produced documents, including an assignment recorded in Dallas County, that were signed by a "notorious robo-signer" and such documents are invalid and "probative, if not indicative of [OneWest's] intent to mislead and rely on fraudulent documents." Further, Henning contended OneWest "failed to establish default" because (1) "[OneWest's] own documents reflect confusion and misrepresentations regarding its claim of default"; (2) "the incorporated obligation that [OneWest] undertook created specific actions that it must undertake in the event of a default" and "[u]nder this analysis, missing payment(s) cannot be a material breach under the terms of the contract, since the contract specifically imposes obligations on mortgagees and loan servicers in the event of arrearage prior to acceleration and foreclosure"; and (3) the "guidelines" governing Henning's loan provide that OneWest "is to maintain payments to Fannie Mae, despite [Henning's] failure to make them" and "[u]nder those terms, there can be no default if the mortgage payments continued to be made by OneWest to Fannie Mae." Henning's "Objection and Response to Defendant's Motion for Summary Judgment" listed twenty exhibits purportedly "attached" as summary judgment evidence. However, the record does not show any attachments to that document.

In his response to OneWest's no-evidence motion for summary judgment, Henning contended in part that OneWest's no-evidence motion "raises only conclusory objections and,

without more specific challenges, is improper." Additionally, Henning restated the arguments described above and asserted, *inter alia*, (1) OneWest "has failed to establish it is the valid holder of the Note"; (2) "OneWest's actions, contradictions and miscommunications regarding payment arrangements and amounts owed reflect a pattern or practice intended to mislead [Henning]"; (3) communications between Henning and OneWest reflect "lack of reasonable care," "confusing and contradictory information regarding [Henning's] loan balance, amounts owed and payment arrangements," and Henning's reliance; (4) OneWest utilized deceptive means to collect the debt in question and deceptive trade practices respecting services independent of the original mortgage loan; (5) Henning has properly brought a cause of action under the Texas Declaratory Judgment Act based on his contentions that OneWest "is a stranger to and possesses no rights or status" in regard to the note and "must be enjoined from their unlawful attempts to evict or otherwise disturb the quiet enjoyment of [Henning's] property"; and (6) Henning will suffer irreparable harm without the injunctive relief sought. Evidence cited in and attached to Henning's response to OneWest's no-evidence motion for summary judgment included the same twenty exhibits listed in his "Objection and Response to Defendant's Motion for Summary Judgment." Among those exhibits were an affidavit of Henning, documents and correspondence pertaining to the loan in question, and assignments of the note and deed of trust.

The trial court signed an order dated December 21, 2011, granting OneWest's no-evidence motion for summary judgment as to all of Henning's claims.[3] Additionally, the trial court signed a December 21, 2011 "Final Judgment" in which it granted OneWest's traditional motion for summary judgment and ordered that, due to default by Henning, OneWest is entitled

---

[3] In its order, the trial court stated it had considered the evidence "on file at the time of the hearing." However, the record in this Court contains no reporter's record of any hearing on OneWest's summary judgment motions. Henning states in his appellate brief that "[t]here was no Reporter's Record of the Summary Judgment hearing before the Trial Court."

to foreclose its security interest in the property or proceed with non-judicial foreclosure of its lien. This appeal timely followed.

## II. SUMMARY JUDGMENT

### *A. Standard of Review*

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). We consider the evidence in the light most favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Green v. McKay*, 376 S.W.3d 891, 898 (Tex. App.—Dallas 2012, pet. denied). Further, with the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the nonmovant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement to judgment in order to preserve an issue for appeal. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993); *Young v. McKim*, 373 S.W.3d 776, 784 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

The standard of review for a traditional summary judgment is well known. *See Nixon*, 690 S.W.2d at 548; *Green*, 376 S.W.3d at 897. The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R.

CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. A fact is material if it affects the ultimate outcome of the lawsuit under the governing law. *See Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 714 (Tex. App.—Tyler 2007, pet. denied). If the movant satisfies its burden, the burden shifts to the nonmovant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied).

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). "The motion must state the elements as to which there is no evidence." *Id.* Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See id.*; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Our inquiry focuses on whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *See King Ranch*, 118 S.W.3d at 751; *Flood*, 294 S.W.3d at 762. Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch*, 118 S.W.3d at 751.

### *B. Analysis*

1. OneWest's Traditional Motion for Summary Judgment

In his first issue, Henning contends the trial court erred by granting OneWest's traditional motion for summary judgment as to its foreclosure counterclaim because OneWest failed to establish (1) a "valid chain of title" respecting the note and (2) that Henning was "in default as a

matter of law." According to Henning, an assignment of the note and deed of trust from IndyMac Bank, F.S.B., to OneWest was signed by "an admitted robo-signer" and therefore raised fact issues as to the chain of title on the note. Further, as to default, Henning asserts (1) "[OneWest's] own documents reflect confusion and misrepresentations regarding its claim of default"; (2) "the incorporated obligation that [OneWest] undertook created specific actions that it must undertake in the event of a default" and "[u]nder this analysis, missing payment(s) cannot be a material breach under the terms of the contract, since the contract specifically imposes obligations on mortgagees and loan servicers in the event of arrearage prior to acceleration and foreclosure"; and (3) the "guidelines" governing Henning's loan provide that OneWest "is to maintain payments to Fannie Mae, despite [Henning's] failure to make them" and "[u]nder those terms, there can be no default if the mortgage payments continued to be made by OneWest to Fannie Mae." OneWest responds that the trial court did not err by granting its traditional motion for summary judgment on its counterclaim because OneWest proved as a matter of law that it was the note holder and Henning defaulted.

"To recover for a debt due and owing under a promissory note, a party must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing." *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Further, when endorsed in blank, "an instrument becomes payable to bearer and may be negotiated by transfer of possession alone." TEX. BUS. & COM. CODE ANN. § 3.205(b) (West 2002 & Supp. 2012); *accord Robeson v. Mortg. Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *4 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.); *see also Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03–11–00429–CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) ("[w]hen a mortgage note is transferred, the mortgage or deed of trust is also

automatically transferred to the note holder by virtue of the common-law rule that 'the mortgage follows the note'") (citing *J.W.D., Inc. v. Fed. Ins. Co*., 806 S.W.2d 327, 329–30 (Tex. App.—Austin 1991, no writ)).

The record shows that the evidence in support of OneWest's traditional motion for summary judgment included a "true and correct copy" of the note attached to Marks's affidavit. Additionally, Marks stated in part in her affidavit (1) "OneWest Bank, FSB is in possession of the original Note, is the current holder of the Note and Deed of Trust, and is entitled to enforce the Note and Deed of Trust and to collect all sums due thereunder," (2) Henning's signature is on the note, and (3) "the sum of $324,143.86 is due and owing on the Note." On the final page of the note is an endorsement from Willow Bend Mortgage Company to "IndyMac Bank, F.S.B.," and, below that endorsement, an endorsement in blank signed by "IndyMac Bank, F.S.B."

Henning's challenge to the note's "chain of title" is based on his contention that the assignment described above from IndyMac Bank, F.S.B., to OneWest was signed by a "robo-signer" and is therefore "fraudulent." In support of his contention, Henning cites a slip opinion from unrelated New York litigation involving OneWest where an issue was raised as to the authority of a "robo-signer" to sign certain documents in that case. *See OneWest Bank, F.S.B. v. Drayton*, 910 N.Y.S.2d 857 (N.Y. Sup. Ct. 2010). This same "robo-signer" is alleged by Henning to have signed an affidavit in his bankruptcy. Henning continues his argument, stating this same purported "robo-signer" is the person who, in this case, signed "the Assignment of Note and Deed, purporting to transfer title to OneWest," that was recorded in Dallas County. Henning makes the conclusory statement that the affidavit filed in his bankruptcy "is at the very least probative, if not indicative of Defendant OneWest's intent to mislead and rely on fraudulent documents." However, Henning identifies no evidence in the record, and we have found none, that disputes the evidence presented by OneWest that (1) the note was endorsed in blank and (2)

as stated in Marks's affidavit, OneWest was in possession of the original note. We conclude the record shows no genuine issue of material fact respecting the "chain of title" on the note. *See* TEX. BUS. & COM. CODE ANN. § 3.205(b); *Robeson*, 2012 WL 42965 at *4–*5; *see also* TEX. R. CIV. P. 166a(c).

As to default, we address Henning's three arguments in turn. First, Henning asserts in his amended brief in this Court that "as [OneWest's] own documents reflect confusion and misrepresentations regarding its claim of default, at the very least, the evidence presented to the trial court raised genuine issues that should have precluded summary judgment." This same argument was asserted in Henning's "Objection and Response to Defendant's Motion for Summary Judgment" in the trial court, with citation to "Exhibits H, I, J, & L." However, as described above, no evidence was attached to that response.

In his amended brief in this Court, Henning cites no authority for this argument. Further, the only purported evidence he cites are the following documents attached to his "Response to Defendant's No-Evidence Motion for Summary Judgment": (1) an affidavit by him in which he describes purported "misinformation" received by him from OneWest by phone and in written correspondence prior to the filing of this lawsuit, (2) a November 17, 2010, letter from Henning to IndyMac in which Henning apologizes for "the mix up and delays of payments" and states that a check is enclosed that "should bring the account current," and (3) a copy of the October 19, 2010 notice of default described above, on which are included unexplained handwritten notes. On this record, we cannot conclude Henning raised an issue of material fact in the trial court as to "confusion and misrepresentation" in "[OneWest's] own documents" that would preclude traditional summary judgment on OneWest's counterclaim.

As part of our analysis of the above point, we note that in his reply brief in this Court, Henning attempts to amplify his argument made in the opening brief by contending

> OneWest's Response fails to offer any authority or argument, or to otherwise dispel its documented practices of misrepresentations and flawed servicing[.] Such abuses constitute a breach of its duties and obligation, which legally and equitably bar any claim of default on the part of Henning. (A defendant's breach may excuse a plaintiff's performance and entitle plaintiff to maintain a cause of action for that breach. See *Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dis'd by agr.).

The record does not show Henning specifically asserted in the trial court his argument in his appellate reply brief that OneWest's alleged "abuses" constitute "a breach of its duties and obligation, which legally and equitably bar any claim of default." *See McConnell*, 858 S.W.2d at 343 (nonmovant must expressly present to trial court, by written answer or response, any issues defeating movant's entitlement to judgment in order to preserve issue for appeal). Moreover, Henning does not explain what "duties and obligation" of OneWest were breached or cite to the record respecting such "duties and obligation." *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Consequently, we conclude this argument presents nothing for this Court's review.

Second, Henning contends that "[a]s a mortgage servicer, OneWest's loss mitigation obligations are expressly incorporated into the contracts of borrowers' loans, and may be used as a legal basis to challenge foreclosures." According to Henning, "the incorporated obligation OneWest undertook, created specific actions that it must follow in the event of the default" and "[u]nder this analysis, missing payment(s) cannot be a material breach under the terms of the contract, since the contract specifically imposes obligations on mortgagees and loan servicers in the event of arrearage prior to acceleration and foreclosure." In support of that argument, Henning cites two cases from other jurisdictions. *See Leggette v. Wash. Mut. Bank, F.A.*, No. 3:03-CV-2909-D, 2005 WL 2679699 (N.D. Tex., Oct. 19, 2005) (mem. op. & order); *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538 (Md. 2007).

OneWest responds (1) "[n]either the Note nor the Deed of Trust contain or incorporate loss mitigation obligations" and (2) "Henning misrepresents the purported authorities he cites."

In *Leggette*, Joyce A. Leggette purchased a home in Texas using the proceeds of a loan obtained from Washington Mutual Bank ("WMB") and insured by the Federal Housing Administration ("FHA"). *Leggette*, 2005 WL 2679699, at *1. To secure the loan, Leggette executed a deed of trust that provided, *inter alia*, (1) WMB "may, except as limited by regulations issued by the Secretary [of the United States Department of Housing and Urban Development ("HUD")], in the case of payment defaults, require immediate payment in full" and (2) "In many circumstances regulations issued by the Secretary will limit [WMB's] rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid." *Id*. Leggette defaulted on the mortgage, and WMB notified her that the loan had been accelerated and that "her home would be foreclosed on." *Id*. Leggette sued WMB in Texas state court, alleging WMB was liable for wrongful foreclosure based on violations of three federal regulations respecting mortgage servicing requirements for FHA loans. *Id*. On WMB's motion, the case was removed to federal court based on federal question jurisdiction. *Id*. Several months later, Leggette moved the federal court to remand the case to state court. *Id*. The federal court concluded WMB had failed to meet its burden to establish Leggette presented a claim that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at *5. Therefore, the federal court concluded it lacked subject matter jurisdiction and remanded the case to state court. *Id*. at *6.

In *Neal*, Alan Neal executed a "Maryland FHA Deed of Trust" to secure an FHA-insured loan for the purchase of a dwelling located in Maryland. *Neal*, 922 A.2d at 541. Paragraph 9(d) of the deed of trust stated, "In many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full

–12–

and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Id*. at 542. The deed of trust was assigned for servicing to Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). *Id*. After Neal fell behind in making the monthly mortgage payments, Wells Fargo initiated foreclosure proceedings. *Id*. Neal obtained a pre-sale stay of the foreclosure proceedings by filing suit in Maryland state court for breach of contract and declaratory judgment. *Id*. In his complaint, Neal asserted Wells Fargo breached the terms of paragraph 9(d) of the deed of trust by failing to observe the various pre-foreclosure loss mitigation procedures set out in the HUD mortgage servicing regulations. *Id*. The trial court granted summary judgment in favor of Wells Fargo based on the premise that the HUD regulations were intended for the benefit of HUD enforcement of the FHA mortgage insurance program and did not grant a private cause of action for a borrower such as Neal. *Id*. at 542–43. The "Court of Special Appeals," Maryland's intermediate appellate court, construed Maryland case law to "stand for the general proposition that private parties are bound by and may be liable, each to the other, under state and federal statutory or regulatory standards specifically incorporated into contracts executed between them." *Id*. at 543. Accordingly, the intermediate appellate court remanded the case to the trial court to "determine whether Neal and Wells Fargo bargained for the provision referring to the HUD loss mitigation regulations." *Id*. Wells Fargo petitioned for writ of certiorari in the Maryland Court of Appeals. *Id*. The court of appeals concluded, *inter alia*, that "a mortgagor may not wield as a sword the HUD regulations alluded to in a mandatory FHA form deed of trust." *Id*. at 547. However, the court of appeals stated, "there is ample support that aggrieved mortgagors may assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions." *Id*. The court of appeals reversed the court of special appeals and directed that court to remand the case to the trial court for further proceedings to determine if Neal could meet his burden of proving Wells Fargo had

failed to comply with the HUD regulations pertaining to loss mitigation prior to initiating foreclosure proceedings. *Id*. at 553.

Henning does not describe or cite the "incorporated obligation" he asserts OneWest "undertook," nor does the record show that the note or deed of trust "expressly incorporated" any "loss mitigation obligations." Further, we do not find *Leggette* or *Neal* helpful. As described above, the court in *Leggette* did not reach the merits of the plaintiff's claims. *See Leggette*, 2005 WL 2679699, at *6. *Neal*, unlike the case before us, involved an "FHA Deed of Trust" that specifically referred to HUD regulations pertaining to acceleration and foreclosure. *Neal*, 922 A.2d at 541–42. On this record, we cannot agree with Henning that summary judgment was precluded by a "loss mitigation obligation" of OneWest.

Third, Henning argues the "guidelines" governing his loan provide that OneWest "is to maintain payments to Fannie Mae, despite [Henning's] failure to make them" and "[u]nder those terms, there can be no default if the mortgage payments continued to be made by OneWest to Fannie Mae." In support of that argument, Henning cites, in its entirety, a fifteen-page "Amended and Restated Agreement with Respect to Servicing Transfer and Enforcement of Selling Representations and Warranties" (the "amended agreement") attached to his "Response to Defendant's No-Evidence Motion for Summary Judgment." That amended agreement is dated September 24, 2010. The parties to that amended agreement included One West, Fannie Mae, and others, but not Henning. The copy attached to Henning's response is signed only by Fannie Mae.

OneWest asserts in this Court that Henning did not attach the amended agreement to his "Objection and Response to Defendant's Motion for Summary Judgment." Additionally, OneWest contends that "[e]ven assuming an agreement between Fannie Mae and OneWest,

Henning did not make the payments required under the Note" and "[t]he alleged obligation of OneWest to Fannie Mae is irrelevant to Henning's obligations."

As described above, Marks stated in her affidavit (1) "Henning defaulted on the Note and Deed of Trust by failing to make payments as they became due," (2) "Movant mailed to Henning a written Notice of Default informing Henning of Movant's intent to accelerate the remaining installments under the Note if the default in payments were not timely cured," (3) "[t]he default was not cured, and a Notice of Acceleration was sent on behalf of Movant" and (4) "the sum of $324,143.86 is due and owing on the Note." Additionally, copies of the note, deed of trust, loan modification agreement, and documents pertaining to Henning's payment history were attached to Marks's affidavit. Henning does not identify any specific provision of the amended agreement that supports his argument or explain how "there cannot be a default if the mortgage payments continued to be made by OneWest to Fannie Mae." *See* TEX. R. APP. P. 38.1(i). Further, the record does not show the amended agreement was before the trial court with respect to OneWest's motion for traditional summary judgment. On this record, we cannot conclude Henning raised a genuine issue of material fact as to default. *See Affordable Motor Co., Inc.,* 351 S.W.3d at 519 (if movant satisfies its summary judgment burden under 166a(c), burden shifts to nonmovant to preclude summary judgment by presenting evidence that raises genuine issue of material fact); *see also* TEX. R. CIV. P. 166a(c).

We decide Henning's first issue against him.

### 2. OneWest's No-Evidence Motion for Summary Judgment

In his second through twelfth issues, Henning contends the trial court erred by granting OneWest's no-evidence motion for summary judgment because (1) "[i]n its motion, OneWest failed to present anything more than conclusory allegations and a recitation of the necessary

elements, which failed to satisfy its burden" and (2) the evidence presented by Henning in his response to that motion raised material fact issues on each of his claims.

OneWest responds that its no-evidence motion "set forth the elements required for each of Henning's alleged theories of recovery, and pointed out that there was no evidence to support the requisite elements of any claim." According to OneWest, "[t]o avoid summary judgment, Henning was required to produce competent summary judgment evidence on each of the challenged elements" and Henning "failed to meet his burdens."

### a. Conclusory Motion

The supreme court has stated that a no-evidence motion for summary judgment "must be specific in challenging the evidentiary support for an element of a claim or defense" and "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (citing comment to rule 166a(i)). The underlying purpose of this requirement is "to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment." *Id*. at 311. The supreme court has analogized this purpose to that of "fair notice" pleading requirements. *Id*.

In the case before us, the record shows that in its no-evidence motion, OneWest unambiguously stated the elements of each of Henning's claims and identified the elements as to which it contended there was no evidence. *See id.* Further, the record reveals no confusion as to Henning's claims or OneWest's assertions of no evidence. *See id.* Therefore, we conclude OneWest's motion gave "fair notice" to Henning of what it was challenging and was not the type of "conclusory" motion barred by rule 166a(i). *See id*.

### b. OneWest's Status as Note Holder

–16–

In his second issue, Henning contends the trial court erred by granting OneWest's no-evidence motion for summary judgment as to his claim that OneWest is not the "note holder."[4] Henning asserts the same arguments described above in Henning's response to OneWest's traditional motion for summary judgment in which response Henning challenged the validity of an assignment of the note signed by an alleged "robo signer."  OneWest responds that it "proved as a matter of law that it was the holder" and "Henning failed to offer proof that OneWest was not the holder of the Note."

As stated above, Henning identifies no evidence in the record that disputes that (1) the note was endorsed in blank and (2) as stated in Marks's affidavit, OneWest was in possession of the original note.  The trial court did not err in granting OneWest's traditional and no-evidence motions for summary judgment on this issue.  Therefore, we decide against Henning on his second issue.  *See* TEX. BUS. & COM. CODE ANN. § 3.205(b); *Robeson*, 2012 WL 42965 at *4–*5.

### c. Common Law and Statutory Fraud

In his third and fourth issues, Henning challenges the trial court's no-evidence summary judgment on his claims of (1) common law fraud and (2) statutory fraud pursuant to section 27.01(a) of the Texas Business and Commerce Code.  *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009).  OneWest asserts Henning did not meet his no-evidence summary judgment burden as to these claims because he "offered no proof of fraud damages."

The elements of common law fraud are "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the

---

[4] We note that Henning failed to object below or on appeal that this issue was an element of OneWest's counterclaim on which OneWest had the burden of proof.  *See Austin*, 261 S.W.3d at 72; TEX. R. CIV. P. 166a(i) (limiting no-evidence motion to nonmovant's claim or defense).

–17–

party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). The elements of statutory fraud under section 27.01(a) are essentially the same as the elements of common law fraud, except that section 27.01(a) does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex. App.—Austin 2001, pet. denied); *Tsai v. Chang*, No. 05–00–00177–CV, 2001 WL 717807, at *6 (Tex. App.—Dallas June 27, 2001, pet. denied) (not designated for publication); *see also Tennill v. Boardwalk Fine Prop., Inc.*, No. 05-05-00399-CV, 2006 WL 2423587, at *3 (Tex. App.—Dallas Aug. 23, 2006, no pet.) (mem. op.) (claims for fraud and statutory fraud both require essential element of damages).

In its no-evidence motion for summary judgment, OneWest listed the elements for common law and statutory fraud and asserted Henning "can adduce no competent summary judgment evidence" that would establish "these essential elements." In his response to that motion, Henning stated in part "OneWest's actions, contradictions, and miscommunications regarding payment arrangements and amounts owed, reflect a pattern or practice intended to mislead Plaintiff and result in the default and attempted foreclosure of Plaintiff's home." Henning did not address the element of fraud damages in his response or cite evidence of such damages. Further, Henning does not specifically address fraud damages in his amended brief in this Court.[5]

In his reply brief in this Court, Henning contends in part

> OneWest's argument that Henning failed to assert damages as part of his
> fraud claim is without merit. Certainly the misadministration of Henning's loan is

---

[5] In his argument respecting his third issue in his amended brief in this Court, Henning asserts, and cites purported evidence, that in 2009, OneWest represented to Henning that he would receive a loan modification if he complied with certain requirements. Henning contends that despite his compliance with those requirements, he was never offered that loan modification. To the extent Henning contends this is evidence of fraud damages, that argument was not raised in the trial court and therefore presents nothing for this Court's review. *See McConnell*, 858 S.W.2d at 343; *Young*, 373 S.W.3d at 784.

evidence of significant damage in that such actions served as the basis of OneWest's assertion of default. Had Henning's loan payments been properly applied to the payment arrangement he made with OneWest, Henning's loan would have been returned to a producing loan as he repeatedly sought to have. Instead, OneWest's deceptive actions created the violations that threatened, and eventually led to the unlawful foreclosure of Henning's home.

Moreover, OneWest's failure to properly apply and credit payments, such as those made pursuant to the third TPP payment, created a false appearance of being late, resulting in unjustified late fees to Henning's loan.

However, those arguments were not raised in the trial court and therefore present nothing for this Court's review. *See McConnell*, 858 S.W.2d at 343; *Young*, 373 S.W.3d at 784.

We decide against Henning on his third and fourth issues.

### d. Fraudulent Lien or Claim

In his fifth issue, Henning asserts the trial court erred by granting OneWest's no-evidence motion for summary judgment as to his claim respecting violation of section 12.002(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a) (West 2002). The elements of a claim under section 12.002(a) are that the defendant (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish. *Id.*; *Merritt v. Davis*, 331 S.W.3d 857, 860 (Tex. App.—Dallas 2011, pet. denied). For purposes of section 12.002(a), "'[l]ien' means a claim in property for the payment of a debt and includes a security interest." TEX. CIV. PRAC. & REM. CODE ANN. § 12.001(3).

According to Henning's amended brief in this Court,

MERS conveyed assignments with the intent of creating a lien that was to be afforded all the authority of a valid lien, with full knowledge that the assignment was made by an individual that lacked the authority to act as the corporate officer she purported to have, resulting in a void assignment. Moreover, as stated above, OneWest prepared and filed Assignments that OneWest knew were fraudulent when filed. As such OneWest was aware of the harmful effect those documents would cause and, in fact, intended that harm. Accordingly, Appellant raised genuine fact issues that should have precluded summary judgment.

OneWest asserts (1) Henning responded to OneWest's no-evidence motion for summary judgment on this claim with "vague allegations" that "were not evidence and raised no fact issue" and (2) "[a]s a matter of law, assignments do not create liens" and therefore section 12.002 is inapplicable.

The record shows that in its no-evidence motion for summary judgment, OneWest contended Henning "can adduce no competent summary judgment evidence that would establish that [OneWest] violated any part of § 12.002." Henning's response pertaining to his section 12.002 claim was essentially identical to his appellate argument quoted above and did not include any citations to evidence. While Henning stated generally that "assignments" were "conveyed" by MERS, he did not describe or identify those "assignments." Further, Henning did not assert, or cite evidence to show, that the "assignments" that he contends were "prepared and filed" by OneWest were "liens" as defined in section 12.001(3). TEX. CIV. PRAC. & REM. CODE ANN. § 12.001(3); *cf. Garcia v. Bank of N.Y. Mellon*, No. 3:12–CV–0062–D, 2012 WL 692099, at *3 (N.D. Tex. Mar. 5, 2012) (dismissing section 12.002(a) fraudulent lien claim because plaintiffs did not plead facts to establish that allegedly invalid assignment of deed of trust was "lien" as defined in section 12.001(3)).

We decide Henning's fifth issue against him.

### e. Negligent Misrepresentation

In his sixth issue, Henning contends the trial court erred by granting OneWest's no-evidence motion for summary judgment as to his negligent misrepresentation claim. The elements of negligent misrepresentation are (1) the defendant made a representation in the course of its business or in a transaction in which it had an interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the

plaintiff suffered pecuniary loss by justifiably relying on the representation. *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 397 (Tex. App.—Dallas 2012, no pet.) (citing *Cunningham v. Tarski*, 365 S.W.3d 179, 186–87 (Tex. App.—Dallas 2012, pet. denied)).

In its no-evidence motion for summary judgment, OneWest listed the elements described above and contended Henning "cannot adduce competent summary judgment evidence that would establish any of these essential elements of his negligent misrepresentation claim."

Henning responded as follows:

As set forth above, the attached exhibits reflect [OneWest's] pecuniary interest in the transactions with Plaintiff, including the loan modifications. Further, the communications between Plaintiff and [OneWest] reflect the lack of reasonable care and the confusing and contradictory information regarding Plaintiff's loan balance, amounts owed and payment arrangements. Further, Plaintiff's communications and his affidavit reflect his reliance on the misinformation that [OneWest] continued to offer as well as the financial and emotional damages; Plaintiff has incurred and continues to incur.

Henning's response on this issue in the trial court contained no citations to evidence.

In his amended brief in this Court, Henning (1) states in part that OneWest failed to assert in the trial court "which element lacked evidence" and (2) describes purported "misrepresentations" made to him by OneWest pertaining to a loan modification he sought in 2009 that "never came." According to Henning,

The evidence presented to the trial court reflected that the numerous misrepresentations to Mr. Henning regarding facts that existed at the time, as well as representations regarding future conduct. [sic]
. . . .
One West failed to perform on the representations made and Mr. Henning relied on the representation . . . .

In support of those contentions, Henning cites to his affidavit described above, in which he stated in part

I have paid thousands of dollars that were never credited to my loan in reliance on the information by OneWest that doing so would save my home and have made every effort to obtain a valid loan modification, only to receive contradictory and inconsistent information from One West. The continual misinformation caused me

–21–

considerable physical and emotional stress. As a husband and father, I have suffered, and continue to suffer many sleepless nights worrying about losing my home.

OneWest asserts in its brief in this Court (1) "[n]o competent evidence was adduced that OneWest made a false representation in the course of its business, for the guidance of Henning, upon which he justifiably relied to his detriment and suffered damages" and (2) Henning's response "did not identify any specific evidence raising fact issues."

In his reply brief in this Court, Henning contends OneWest's appellate brief addresses only "lack of damages." Further, Henning states

> The evidence presented to the trial court reflected that the numerous misrepresentations that OneWest failed to perform and [sic] that they were misrepresentations which Henning relied on. Thus, OneWest's failure to offer a valid permanent modification resulted in the damages that thrust Plaintiff into a spiraling problem which ultimately resulted in the foreclosure of Henning's home.

As described above, the record shows OneWest challenged all essential elements of negligent misrepresentation in its no-evidence motion for summary judgment, which we have previously concluded may be done on a no-evidence motion for summary judgment. *See Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 861–62 (Tex. App.—Dallas 2005, no pet.). Further, based on the language in OneWest's appellate brief quoted above, we cannot agree with Henning that OneWest addressed only "lack of damages" in that brief. Finally, even assuming without deciding that Henning's affidavit, which was one of the "attached exhibits" referred to generally in his no-evidence summary judgment response, constituted more than a scintilla of evidence of damages, we cannot conclude Henning met his rule 166a(i) burden as to his negligent misrepresentation claim. *See* TEX. R. CIV. P. 166a(i). Although Henning asserted in his affidavit in the trial court that the information he received from OneWest was "contradictory" and "inconsistent," the record does not show he presented evidence of "false" information, which is a

–22–

required element of negligent misrepresentation. *See Ostrovitz & Gwinn, LLC*, 393 S.W.3d at 397.

We decide against Henning on his sixth issue.

### f. Texas Debt Collection Practices Act

In his seventh issue,[6] Henning asserts the trial court erred by granting OneWest's no-evidence summary judgment motion as to his Texas Debt Collection Practices Act ("TDCPA") claim. *See* TEX. FIN. CODE ANN. §§ 392.001–.404 (West 2006). Section 392.303 of the TDCPA states in part

> (a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:
> . . . .
>> (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer . . . .

TEX. FIN. CODE ANN. § 392.303.

> Section 392.304 provides in part as follows:

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
> . . . .
>> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding; [or]
>> . . . .
>> (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

TEX. FIN. CODE ANN. § 392.304.

In its no-evidence motion for summary judgment, OneWest asserted Henning "is unable to present evidence that [OneWest's] conduct violated any statute of the [TDCPA]."

---

[6] In Henning's brief in this Court, both this issue and the preceding issue are labeled as "Issue No. 6." For purposes of clarity, we refer to Henning's twelve issues by ordinal numbers rather than the designations used in his brief.

Additionally, OneWest stated in part that Henning could adduce no competent summary judgment proof that OneWest (1) "used a false misrepresentation or deceptive means to collect a debt or obtain information concerning [Henning]," (2) "used a fraudulent, deceptive, or misleading representation by misrepresenting the character, extent, or amount of [Henning's] debt," (3) "misrepresented the debt's status in a judicial or governmental proceeding," or (4) "collected or attempted to collect interest, a charge, a fee, or an expense incidental to the obligation which was not expressly authorized by the agreement creating the obligation or legally chargeable to [Henning]."

In his response to OneWest's no-evidence motion, Henning cited seven exhibits attached to his response: his affidavit described above, five letters to him from OneWest, and one letter to OneWest from him. Additionally, Henning asserted in part in his response

> . . . [A]s articulated above, Plaintiff sent payments in, which OneWest misapplied, or failed to post, or sent them back after representing it would accept the payments.
> . . . .
> As stated above, Defendant prepared, executed and filed various documents in the county records that contained fraudulent and misleading information.
> . . . As further evidenced in his May 25, 2010 letter to OneWest, Plaintiff incurred thousands of dollars in costs, which he relied on OneWest to apply toward his mortgage, only to learn that none of the amounts were credited, creating even greater amounts owed and the assessment of ever larger costs and fines.

On appeal, Henning asserts in part that "the summary judgment evidence reflected misrepresentations by OneWest, which eventually resulted in the wrongful foreclosure of his home." However, Henning does not identify, and the record does not show, evidence to support his conclusory assertions that OneWest (1) sent back payments "after representing it would accept the payments" or (2) "applied" or "posted" amounts paid by Henning in a manner other than had been represented. Further, in the trial court, Henning did not identify or cite specific

evidence to support any particular violation of the TDCPA. *See* TEX. FIN. CODE ANN. §§ 392.303–.304.

We decide against Henning on his seventh issue.

### g. Texas Deceptive Trade Practices Act

In his eighth issue, Henning challenges the trial court's granting of OneWest's no-evidence motion for summary judgment as to his claim under the Texas Deceptive Trade Practices Act ("DPTA"). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 and Supp. 2012). Generally, a plaintiff in a DTPA action must show (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, deceptive, or unconscionable acts, and (3) those acts constituted a producing cause of the consumer's damages. *See id*. § 17.50(a); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Henning asserts his DTPA claim is based on both (1) violation of the terms of the DTPA and (2) violation of the TDCPA as described above, which constitutes a DTPA violation. *See* TEX. BUS. & COM. CODE ANN. § 17.50; TEX. FIN. CODE ANN. § 392.404(a) ("violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code"). According to Henning, summary judgment on his DTPA claim should have been precluded because "[t]he facts establish that OneWest misrepresented the character, extent or amount of debt OneWest claimed was owed, by not crediting money received or by losing payments."

OneWest responds in part that Henning "waived appellate review of this issue" because his appellate brief "provides no citations to the record." Further, OneWest asserts Henning's response to its no-evidence summary judgment motion did not identify any "purported evidence" of the elements challenged by OneWest, including "fraudulent, misleading, deceptive, or unconscionable acts by One West" and "evidence of purported DTPA damages."

The record shows Henning's response to OneWest's no-evidence motion respecting his DTPA claim referred to "actions" of OneWest "as set forth in Plaintiff's pleadings and herein" and damages "as set forth," with no citations to evidence. Additionally, there are no citations to the record respecting this issue in Henning's amended brief or reply brief in this Court. Henning asserts in his reply brief that "the Texas Supreme Court has disapproved of appellate courts affirming a trial court judgment based on briefing irregularities, where the appellant wasn't provided an opportunity to correct or waive the defects or irregularities."

On this record, we cannot conclude Henning lacked an "opportunity to correct" his appellate brief. *See* TEX. R. APP. P. 38.1(i). Moreover, based on Henning's lack of citation to evidence in his no-evidence summary judgment response in the trial court, we conclude Henning did not meet his rule 166a(i) burden as to this issue. *See* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

We decide Henning's eighth issue against him.

### h. Breach of Contract

Henning's ninth issue challenges the trial court's granting of OneWest's no-evidence motion for summary judgment as to his breach of contract claim. Specifically, Henning contends (1) OneWest committed to offer Henning a loan modification pursuant to the federal "Home Affordable Modification Program" ("HAMP"), but failed to do so, and (2) "OneWest's obligations to offer [Henning] a valid HAMP modification, and its subsequent duty to do so, resulted in a breach of contract action which should have precluded summary judgment."

OneWest asserts in part (1) federal courts in Texas and elsewhere "consistently hold that borrowers do not have standing to bring state law claims for violation of obligations owed under the agreements between lenders and the United States Department of the Treasury that comprise the HAMP program," (2) Henning "failed to demonstrate by summary judgment evidence fact

issues on either his performance or breach by OneWest," and (3) Henning "did not mention or raise fact issues on contract damages."

To succeed on a breach of contract claim, the claimant must establish (1) a valid contract existed, (2) he performed or tendered performance, (3) the defendant breached the contract, and (4) the claimant was damaged as a result of that breach. *See, e.g., Burnett v. Coppell N. Tex. Court, Ltd*., 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied); *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.). The record shows OneWest listed those elements in its no-evidence motion for summary judgment and stated in part that Henning "cannot adduce competent summary judgment evidence that would establish any of these essential elements" as to his breach of contract claim. In his response to OneWest's no-evidence motion, Henning cited no evidence and did not address damages. Further, Henning does not address breach of contract damages in his amended brief or reply brief in this Court. On this record, we conclude Henning did not meet his summary judgment burden as to his breach of contract claim. *See* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

We decide Henning's ninth issue against him.

i. Exemplary Damages, Declaratory Relief, and Injunctive Relief

In his tenth, eleventh, and twelfth issues, respectively, Henning contends the trial court erred by granting summary judgment as to his claims for exemplary damages and declaratory and injunctive relief. OneWest responds "Henning failed to provide any citation to the record in support of these issues" and therefore "[a]ppellate review was waived." Additionally, OneWest asserts (1) "Henning's issue regarding exemplary damages failed because no tort claim permitting recovery of exemplary damages was established" and (2) "[t]he declaratory relief sought by Henning was that OneWest did not own the Note" and "[n]o evidence was adduced by Henning controverting the Note or its possession."

"'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (West 2008). Under section 41.003(a) of the Texas Civil Practice and Remedies Code, exemplary damages may generally be awarded "only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from (1) fraud, (2) malice, or (3) gross negligence." *Id*. § 41.003(a). Further, section 41.004(a) provides that generally, "exemplary damages may be awarded only if damages other than nominal damages are awarded." *Id*. § 41.004(a).

The purpose of seeking a declaratory judgment is to settle and afford relief of uncertainty and insecurity about rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008); *Bright v. Addison*, 171 S.W.3d 588, 606 (Tex. App.—Dallas 2005, pet. denied). A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id*.

At common law, to obtain a permanent injunction an applicant must demonstrate (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) no adequate remedy at law. *See Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ); *Jordan v. Landry's Seafood Rest., Inc*., 89 S.W.3d 737, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

The record shows that in his complaint in the trial court, Henning (1) alleged he was entitled to exemplary damages under section 41.003, (2) requested a declaratory judgment specifying his and OneWest's rights and duties in connection with the Note, and (3) sought a

permanent injunction "[b]ased on the facts above" that would require OneWest to "desist and refrain from entering and taking possession of the [property] or otherwise interfering with [Henning's] right to the quiet enjoyment and use of the [property]; proceeding with or attempting to sell or foreclose upon the [property]; and, attempting to purchase, transfer, assign or collect on the Note." With respect to those claims, OneWest's no-evidence motion for summary judgment stated in part that Henning can adduce no competent summary judgment proof: (1) "to support any of his claims, much less that OneWest acted with the requisite willfulness, malice or gross negligence that would support a claim for exemplary damages"; (2) that "[OneWest] is not the holder of the Note"; and (3) that "there is a probable right to relief, or that there will be a probable injury because the harm is imminent, the injury is irreparable, or that there is no other legal remedy." In his response to that motion, Henning (1) asserted in part that "the evidence attached hereto offer more than a scintilla of evidence supporting Plaintiff's claim for exemplary damages" and (2) referred to an "[a]ffidavit to his temporary restraining order, previously filed with [the trial court]" in support of the "irreparable harm" element of his injunctive relief claim.

In the trial court, Henning did not cite any evidence pertaining to his claims for exemplary damages and declaratory and injunctive relief, nor did he address any elements of his injunctive relief claim other than "irreparable harm." Further, in his amended brief on appeal, he provides no citations to the record pertaining to those claims.[7] In his appellate reply brief, he requests "the opportunity to amend or supplement his brief as necessary to cure any defects in his briefing."

---

[7] In his argument respecting injunctive relief in his amended appellate brief, Henning quotes section 65.011 of the Texas Civil Practice and Remedies Code, which provides a statutory basis for injunctive relief. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011 (West 2008). However, the record does not show section 65.011 was cited by Henning in the trial court or was the basis for his request for a permanent injunction in that court. Accordingly, to the extent Henning relies on section 65.011 to support his argument in this Court, that argument presents nothing for this Court's review. *See McConnell*, 858 S.W.2d at 343; *Young*, 373 S.W.3d at 784.

We concluded above that the trial court did not err by granting OneWest's no-evidence motion for summary judgment as to Henning's claims. Accordingly, no claims remain as to which exemplary damages can be raised or upon which a trial court could address a claim for declaratory judgment or injunctive relief. Therefore, on this record, we conclude summary judgment was proper as to those three remaining claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a); *Bonham State Bank*, 907 S.W.2d at 467; *Priest,* 780 S.W.2d at 875; *see also* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

We decide against Henning on his tenth, eleventh, and twelfth issues.

### III. CONCLUSION

We decide Henning's twelve issues against him. The trial court's judgment is affirmed.


/Douglas S. Lang/
 DOUGLAS S. LANG
JUSTICE


120078F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KENNETH HENNING, Appellant

No. 05-12-00078-CV      V.

ONEWEST BANK FSB, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-16465-L.
Opinion delivered by Justice Lang.  Justices
Myers and Evans participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

      It is **ORDERED** that appellee ONEWEST BANK FSB recover its costs of this appeal
from appellant KENNETH HENNING.


Judgment entered this 2nd day of July, 2013.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE