**Affirm and Opinion Filed July 12, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00006-CV

**BARRETT HORTON, Appellant**

**V.**

**MMM VENTURES LLC, INDIVIDUALLY AND AS GENERAL PARTNER OF CRESCENT ESTATES CUSTOM HOMES LP, AND CRESCENT ESTATES CUSTOM HOMES LP, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-07726**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Partida-Kipness

Before the Court is appellant Barrett Horton's motion for rehearing. We deny the motion for rehearing. On the Court's own motion, we withdraw our May 15, 2023 opinion and vacate our judgment of that date. The following is now the opinion of the Court.

Horton appeals the granting of appellees MMM Ventures LLC and Crescent Estate Custom Homes LP's (collectively Crescent) traditional and no-evidence

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

motion for summary judgment. Horton argues the trial court erred by granting summary judgment on all of the claims he brought against Crescent. We affirm.

## BACKGROUND

Horton filed his underlying lawsuit seeking damages for injuries he sustained in a workplace accident on June 11, 2018. Crescent was the general contractor for a construction project known as the Entrada Project. Michael Dees was Crescent's on-site project manager. Crescent employed Henry Steel Construction, LLC (Henry Steel) as a subcontractor to perform steel erection work on the Entrada Project. Horton worked with Henry Steel as an independent contractor.

On the date of Horton's injury, Henry Steel was moving a load of steel weighing approximately 6,000 pounds into the basement of one of the townhouses being constructed in the Entrada Project. Henry Steel's owner, Bruce White,[2] was directing the project. Bruce was standing on a retaining wall while Horton was in the basement unloading the steel. Francisco Mungia, a Henry Steel employee, operated the forklift, known as the Skytrak, to lower the steel into the basement.

While the steel was being moved, the load slipped off of the forks of the Skytrak and fell approximately three feet into the basement onto wooden pallets. Horton, trying to guide the steel down, ended up underneath part of the steel load, causing injuries to his leg and foot and crushing his right arm. At the time of the

---

[2] We will refer to Bruce White by his first name because he shares a last name with the owner of M&C Roofing, another subcontractor involved in the case.

accident, the Skytrak used was either borrowed from another subcontractor, M & C Roofing, or was one Bruce had rented himself.

There were no Crescent employees present at the townhouse location at the time of Horton's accident, involved in the planning or execution of the steel lowering, or directing Henry Steel on how to do its job. Although the two Crescent project managers were on the Entrada Project site at the time, they were at another location on the property.

Horton filed suit against Henry Steel and Crescent alleging claims and theories of negligence, respondeat superior, negligent undertaking, and negligence per se. Crescent filed a traditional and no-evidence motion for summary judgment and attached deposition testimony from Horton and representatives from Henry Steel and Crescent. Horton's response included the same deposition testimony and a declaration from his safety expert, John Hoffman, who found Mungia was at fault. The trial court granted Crescent's motion and dismissed Horton's claims against Crescent with prejudice without specifying the grounds. The trial court granted Crescent's request to sever its claims and this appeal followed.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

–3–

If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

A party may combine in a single motion a request for summary judgment under no-evidence and traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650– 51 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c), (i). When a party seeks summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach the issue of whether the trial court erred in granting summary judgment under the traditional standard. *See Ridgway*, 135 S.W.3d at 600; *see also* TEX. R. CIV. P. 166a(c).

A party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166(a)(i). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A "no-

evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing TEX. R. CIV. P. 166(a)(i)). By contrast, to be entitled to traditional summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *JLB Builders*, 622 S.W.3d at 864; *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); *see* TEX. R. CIV. P. 166(a)(c).

## ANALYSIS

On appeal, Horton maintains the trial court erred by granting summary judgment for Crescent on his negligence claim because Crescent owed him a duty of care, breached that duty, and that breach proximately caused Horton's injury and damages. Horton also challenges the summary judgment rulings as to his claims for negligent undertaking and negligence per se. We will address each cause of action in turn.

## I.    Negligence

When analyzing a negligence claim, we must first ask whether the defendant owed the plaintiff a duty. *JLB Builders*, 622 S.W.3d at 864. Whether Crescent owed Horton a duty is governed by the law concerning a general contractor's duties to a subcontractor's employee. *Id*. As a general rule, one who employs an independent contractor has no duty to ensure that the contractor safely performs his work. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020). There is an

exception to the rule when "the employer retains some control over the manner in which the contractor performs the work that causes the damage." *Id*. (quoting *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006)). A plaintiff can prove the requisite control by establishing that the general contractor either actually controlled the manner in which the subcontractor performed its work or had a contractual right to do so. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)). "Control must relate to the condition or activity that caused the injury." *Clayton W. Williams, Jr., Inc. v. Olivio*, 952 S.W.2d 523, 528 (Tex. 1997). Further, the control retained or exercised by the general contractor must "extend [] to 'the mean, methods, or details of the independent contractor's work.'" *Arredondo*, 612 S.W.3d at 295 (quoting *Bright*, 89 S.W.3d at 606). Here, Horton contends Crescent had a contractual right to control the use of the Skytrak and exercised actual control over his work and, therefore, owed him a duty to ensure the Skytrak was used in a safe manner. We conclude Crescent owed Horton no duty of care and affirm the trial court's summary judgment on that basis without addressing the other elements of a negligence claim.

A. **Contractual right to control the Skytrak**

Horton first argues that Crescent owed him a duty because Crescent had a contractual right to determine who could use the Skytrak and how the Skytrak could be used. Horton contends the following testimony from Mickey White, the owner of M&C Roofing, supports his contention that Crescent had "control" of the Skytrak:

> I agreed with Mr. Dees [Crescent's on-site project manager] that M&C would leave the skytrack [sic] that it rented at the Entrada site so that other subcontractors would have access to it for their use in completing their work on the Project.
>
> . . . .
>
> When M&C Roofing was not using the skytrack [sic], I considered it to be under Crescent's control in that Crescent, through Michael Dees, had control over who could use the skytrack [sic] and who could not use it, and how it was to be used.

That testimony, however, does not show that Crescent had a contractual right to control the manner in which Horton or Henry Steel performed its work on the day in question. In fact, Mickey could not know if Crescent exercised control over the work that day because he was not present at the site on the day of the accident and did not know what had occurred related to the Skytrak or Horton's injury. And none of the witnesses who were present on the day of Horton's accident stated that Crescent had contractual control of the Skytrak.

Moreover, the summary judgment evidence did not establish who the Skytrak belonged to or who had control over its use. Although multiple witnesses stated that the subcontractors needed to get permission to use the Skytrak, they did not agree from whom the subcontractors must get such permission. Cresecnt employees testified that subcontractors were required to get permission to use the Skytrak from M&C Roofing. Dees stated in his deposition that he paid Mickey "a little more for the roofing" and had him leave the Skytrak on site for other subcontractors to use. He agreed whenever Henry Steel needed the Skytrak, "it was expected that the

framers[3] would ask [M&C Roofing] whether they could use it." Similarly, Crescent's construction manager Bob Modglin stated that if a subcontractor asked to borrow the Skytrak, he would have told them to ask the roofer. Crescent included in its response on summary judgment that all it did "was make a machine available to contractors who wanted to use it" by making arrangements with Mickey to leave it on the construction site and it "exercised no control over the use of the machine." Horton himself stated he saw Bruce talk to the foreperson of the framers before using the Skytrak. Bruce, however, stated the Crescent representative would normally ask the other subcontractors if people needed to borrow equipment, but he could not remember if he spoke to a Crescent representative about borrowing a Skytrak that day.

The record is also unclear regarding what entity rented the Skytrak. Bruce stated he thought the Skytrak used was one he rented, but later said he could not remember. Mungia testified that he could not remember if the Skytrak was Bruce's or not, but recalled it was already on site the day of the accident. Horton testified that he believed Bruce got the Skytrak from the framers. But he also stated that "somebody said that they had to ask one of the—the general contractors [Crescent] to use the Skytrak" and he saw Bruce speak to Crescent employees on the day of the

---

[3] The framers refer to the subcontractors hired to install the townhome's wood framing.

accident. However, he did not know what Bruce said to those employees and could not confirm whose Skytrak was used:

> Question: All right. So what Skytrak was Bruce [White] using to get the–the steel off of the flatbed?
>
> Answer: The–from my understanding, it was the Skytrak that the framers had.
>
> Question: How did you come by that understanding?
>
> Answer: I can't remember who, but somebody said that they had to ask one of the—the general contractors [Crescent] to use the Skytrak.
>
> . . . .
>
> Question: Did you personally observe or overhear any conversation between Bruce and the general contractors [Crescent]?
>
> Answer: I couldn't tell you honestly.
>
> Question: Did Bruce state anything to you about his conversation with the general contractors?
>
> Answer: Maybe offhand. I just know he asked permission to use the Skytrak.
>
> . . . .
>
> Question: Do you have any personal knowledge of where Bruce got the Skytrak that was being used at the time that you got hurt?
>
> Answer: From the framers.
>
> Question: Right. But is that within—is that your personal knowledge, you saw him get it from the framers?
>
> Answer: From my memory, I remember him talking to the general contractors [Crescent] and then walking over and talking to—the foreman of the framing crew.

This evidence does not support a conclusion that Crescent had contractual control over who could use the Skytrak and how they could use it. We overrule Horton's contention that such contractual control existed here. Because Crescent did not have a contractual right to control the use of the Skytrak, it did not owe any duty to Horton on that basis.

## B.  Actual control over the use of the Skytrak

Horton next argues that Crescent owed him a duty because Crescent exercised control of the Skytrak used and exercised actual control over Horton's activities. In reviewing the summary judgment evidence, both parties included deposition testimony from Horton, Bruce, Mungia, Dees, and Modglin. Bruce, Dees, and Modglin testified regarding the procedures used and interactions between Crescent and the subcontractors concerning work conducted at the worksite. The Crescent representatives explained they knew what the subcontractors were doing on the project based on the plans submitted by the subcontractors to Crescent. According to the Crescent representatives, they would talk to the head subcontractor about the submitted plans and where items being used and installed were placed, but the subcontractors decided how the work would be conducted. Modglin explained he was aware of what work the subcontractors were performing because of the plans submitted, and he used the plans to determine scheduling for the different subcontractors they hired. Modglin and Dees both agreed they would walk the project and observe the work being conducted but said if they saw workers

–10–

performing the job in an unsafe manner, they would talk to the subcontractor, not the subcontractor's employees. However, neither observed Horton's or Henry Steel's work that day, and there was no discussion of the condition of the job site, safe or unsafe. Dees and Modglin stated they were on the Entrada site on the date of Horton's accident, but neither were in the area at the time it occurred.

It is a well-settled rule that an employer's "general right to order work started and stopped" and "to direct when and where the work [i]s done" does not give rise to a duty of care. *Arredondo*, 612 S.W.3d at 295. The fact Crescent controlled the overall timing and sequence of work being performed by their subcontractors "merely indicates that [Crescent] was performing the duties of a general contractor." *JLB Builders*, 622 S.W.3d at 866. The Texas Supreme Court has stated, in order to give rise to a duty, the control exercised must extend to the timing and sequence of the particular independent contractor's work, such as which of the subcontractor's employees "should perform what task and at what point in time." *Bright*, 89 S.W.3d at 609.

Here, there was no evidence that indicates Crescent exercised any control over the timing and sequence of the work of Henry Steel's employees or Horton's work as an independent contractor. Bruce was the head subcontractor on this project for Henry Steel. He testified that he controlled how the job would be performed and told Horton what they were going to do to lower the steel into the basement. Mungia agreed and stated that Bruce decided how to move the steel and perform the job.

Horton presented no evidence to dispute Bruce's admission that he determined and controlled how to proceed. Horton, therefore, failed to show that Crescent exercised actual control of how Henry Steel or Horton performed the job. With no actual control, Crescent would not be liable. The trial court did not err by granting summary judgment for Crescent.

## II.    Negligent Undertaking

Horton next argues the trial court erred by dismissing his negligent undertaking claim because Crescent did not challenge that cause of action in its motion for summary judgment. Crescent argues it moved for summary judgment on all of Horton's claims, including all theories of negligence. We agree. The record confirms that Crescent moved for traditional and no evidence summary judgment on all "negligence based claims" based on Crescent's contention it owed no duty to Horton and breached no alleged duty owed to him.

The elements of negligence are "a duty, a breach of that duty, and damages proximately caused by that breach." *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 399 (Tex. App.—Dallas 2012, no pet.). To prevail on a negligent undertaking claim, Horton was required to prove all elements of a negligence claim plus the additional element of whether Crescent acted in a way that required the imposition of a duty where one did not otherwise exist. *See Nail v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). The duty only arises when a defendant undertakes to render services that it knows or should know are "necessary for the

protection of the other's person or things" and either (1) the failure to exercise reasonable care increases the risk of physical harm or (2) harm results because of the other's reliance on the undertaking. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 152 (Tex. 2022).

Crescent argues that Horton failed to identify any act by Crescent in the trial court that required the imposition of the duty. We agree. Horton did not argue or provide facts to support a finding that Crescent acted in a way that required the imposition of a duty here. Therefore, because the trial court properly granted summary judgment on the elements of negligence and there was no evidence presented regarding an additional duty owed for negligent undertaking, the trial court did not err by dismissing Horton's negligent undertaking claim in its summary judgment order.

## III.    Negligence Per Se

Additionally, Horton challenges the summary judgment on his claim of negligence per se. Generally, negligence per se is a common-law tort concept in which a person's expected standard of conduct is defined by a statute instead of the reasonably prudent person test usually found in "pure" common-law negligence claims. *In re Associated Truss Co.*, No. 05-18-00896-CV, 2018 WL 6695739, at *3 (Tex. App.—Dallas Dec. 20, 2018, no pet.) (mem. op). In a negligence per se case, the jury is not asked to determine if the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances. *Id*. Instead, the

statute itself provides what a reasonably prudent person would have done. *Id*. Unless an excuse for the statutory violation is offered, the jury decides only whether the statute was violated and, if so, whether the violation was a proximate cause of the injury. *Id*.

"Negligence per se is not a separate cause of action that exists independently of a common-law negligence cause of action." *Id*. (quoting *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist. 2009, pet. denied)). "Rather, negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action." *Thomas*, 290 S.W.3d at 445 (citing *Reynolds v. Murphy*, 188 S.W.3d 252, 267 n.20 (Tex. App.—Fort Worth 2006, pet. denied)). Negligence per se is a concept adopted by the civil courts in which a duty is based on a standard of conduct created by a statute rather than on the reasonably prudent person test used in pure negligence claims. *Ward v. ACS State & Local Sols., Inc.*, 328 S.W.3d 648, 652 (Tex. App.—Dallas 2010, no pet.) (citing *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997)). Unless an excuse for the statutory violation is offered, the jury decides only whether the statute was violated and, if so, whether the violation was a proximate cause of the injury. *Id*.

Existence of a legally cognizable duty is a prerequisite to a finding of negligence per se. The evidence presented at summary judgment showed that Crescent did not owe Horton a duty. Because there was no duty owed by Crescent, the trial court properly granted summary judgment on Horton's negligence per se

–14–

claim. Additionally, Horton's pleading at the time of summary judgment did not identify which specific "violations of federal law" he claimed supported his negligence per se theory. Without more specific allegations, Crescent argued any alleged violations of non-penal administrative codes did not establish a viable negligence per se claim by an independent contractor, as Horton was.

Horton did not present evidence Crescent owed him a duty or what specific violations of federal law supported his claim of negligence per se. Under this record, we conclude the trial court did not err by granting Crescent's motion for summary judgment and dismissing Horton's negligence per se claim.

## CONCLUSION

Based on the record before us, the trial court did not err in granting summary judgment in favor of Crescent. Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

220006F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARRETT HORTON, Appellant

No. 05-22-00006-CV      V.

MMM VENTURES LLC,
INDIVIDUALLY AND AS
GENERAL PARTNER OF
CRESCENT ESTATES CUSTOM
HOMES LP, AND CRESCENT
ESTATES CUSTOM HOMES LP,
Appellees

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-07726.
Opinion delivered by Justice Partida-
Kipness. Justices Nowell and
Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MMM VENTURES LLC, INDIVIDUALLY AND AS GENERAL PARTNER OF CRESCENT ESTATES CUSTOM HOMES LP, AND CRESCENT ESTATES CUSTOM HOMES LP recover its costs of this appeal from appellant BARRETT HORTON.

Judgment entered this 12th day of July 2023.